In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00063-CR

                                                ______________________________

 

 

                               JAMES DIXON GRAVES, JR.,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                        On Appeal from the 76th Judicial District Court

                                                             Morris County, Texas

                                                             Trial
Court No. 9907

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            James
Dixon Graves, Jr., was convicted by a jury for several counts of aggravated
sexual assault of a disabled individual and indecency with a child.  In appealing the trial court’s judgments,
Graves complains that it erred in denying his motion to suppress evidence
stemming from a traffic stop.  Graves
argues that the trial court should have authorized funds to allow an expert to
conduct a physical examination of an allegedly disabled witness.  Finally, he contends the trial court erred in
overruling his motion for mistrial.  We
affirm the trial court’s judgments.

I.          Factual and Procedural
Background 

            A cup of liquid
was thrown out of Graves’ vehicle as it was being pulled over by Officer Scott
Burns for an expired registration sticker. 
Additional plastic cups and ice were plainly visible in the vehicle
carrying twenty-year-old Carol Noguera and eighteen-year-old Aaron Seyfer.  Graves was arrested for furnishing minors
with alcohol.  A search of the passenger
compartment produced two bottles of alcoholic beverages, and a fully loaded .22
caliber handgun.  In the trunk, the
officer found several disturbing items including three fully loaded handguns,
four digital cameras, a camcorder, two tripods, an electrical sex toy, and
pornographic DVDs.  

            Noguera,
who was also arrested for being a felon in unlawful possession of a handgun,
told officers that Graves was going to film her having sex with Seyfer in
exchange for money.  She described an
instance where she slept in Graves’ home when she was fifteen after he had
given her alcohol, and she woke with her pubic hair shaved.  Noguera claimed that Graves had filmed her
performing sexual acts in exchange for money, that she had witnessed other
women perform sexual acts with and for Graves in exchange for money, that she had
recently observed pornographic pictures taken by Graves, and stated that Graves
possessed in excess of six obscene devices at his residence.  Noguera also stated she believed Graves had
pornography on his cameras and computers. 
Based on an affidavit filed by Burns, a magistrate judge signed a
warrant authorizing a search of Graves’ residence.  The search produced numerous pornographic
videos, pictures, and sexual devices.  “There
were also kids toys and items that would be associated with kids located inside
his house.  Specific items of interest
were several Barbie dolls in Graves’s bedroom.” 


            After
Burns was killed in the line of duty, Officer Billy Mack Harrison continued the
investigation.  His interview with
Noguera resulted in her statement that she had taken Sharon Ebert, a person Harrison
personally knew to be disabled, to Graves’ home to be filmed performing oral
sex on Graves in exchange for money.  Harrison’s
review of the tapes obtained as a result of the first search warrant confirmed
Noguera’s statement and revealed “saved images of young children nude and
engaging in illegal sex acts which constitutes child pornography.”  “In one tape, Graves coaxe[d] Ebert by
offering to go get Winnie the Pooh.” 
Photographs made by police executing the first search warrant depicted “whips,
masks, restraints, sex toys, dildos, costumes, dozens of pornographic videos
adjacent to children’s toys and dolls (both life-like and Barbi-style [sic]
dolls), [and] Cinderella bedspreads.”  Harrison
signed an affidavit containing his findings in seeking a second search warrant
for Graves’ residence, which produced similar evidence.  

            A
review of the evidence led to the following counts upon which Graves was
convicted by a jury:


 
 
 Our cause number[1]
 
 
 Description
 
 
 
 Statute[2]
 and Number of Counts
 
 
 Sentence 
 
 
 
 
 06-09-00063-CR
 
 
 Lewd exhibition of the
 genitals of children 
 
 
 § 43.26 Possession of child pornography / Ten counts 
 
 
 Ten years TDCJ
 Concurrent 
 
 
 
 
 06-09-00064-CR
 
 
 Actual deviant sexual
 intercourse between children
 
 
 § 43.26 Possession of child pornography / Two counts
 
 
 Ten years TDCJ
 Concurrent
 
 
 
 
 06-09-00065-CR
 
 
 Simulated sexual
 intercourse between children
 
 
 § 43.26 Possession of child pornography / Two counts
 
 
 Ten years TDCJ
 Concurrent
 
 
 
 
 06-09-00066-CR
 
 
 Aggravated Sexual
 Assault of Sharon Ebert
 
 
 § 22.021 Agg. Sexual Assault of Disabled/ Thirteen counts
 
 
 Seventy-five years
 TDCJ Concurrent
 
 
 
 
 06-09-00067-CR
 
 
 Indecency with Noguera
 
 
 
 § 21.11 Indecency with a Child/ Two counts
 
 
 Twenty years TDCJ
 Concurrent
 
 
 
 
 06-09-00068-CR
 
 
 Aggravated Sexual
 Assault of Sharon Ebert
 
 
 § 22.021 Agg. Sexual Assault of Disabled/ One count
 
 
 Seventy-five years
 TDCJ Concurrent
 
 
 
 
 06-09-00069-CR
 
 
 Aggravated Sexual
 Assault of Sharon Ebert
 
 
 § 22.021 Agg. Sexual Assault of Disabled/ Two counts
 
 
 Seventy-five years
 TDCJ Concurrent
 
 
 
 
 06-09-00070-CR
 
 
 Indecency with Noguera
 
 
 
 § 21.11 Indecency with a Child/ Three counts
 
 
 Twenty years TDCJ
 Concurrent
 
 


 

            On
appeal of all judgments, Graves complains that the trial court erred in denying
his:  (1) motion to suppress the
evidence; (2) request for funds to hire an expert; (3) request to have Ebert
examined by the expert as to her disability and competency to testify; and (4)
motion for mistrial.  Graves also
complains that the evidence was insufficient to establish Ebert was disabled
under the Texas Penal Code.  

II.       The Trial Court Did Not Err in Overruling
Graves’ Motion to Suppress the 

            Evidence

 

            A.         Standard of Review

            First,
Graves complains of the trial court’s denial of his motion to suppress.  Specifically, he claims that the reports,
affidavits, and recordings by Burns demonstrating the legality of the traffic
stop should not have been admitted during the hearing because they constituted
hearsay and violated his Confrontation Clause rights.  Graves next suggests that the affidavit by
Burns contains false statements and that the sworn affidavit contained
insufficient facts from which the magistrate could find probable cause that
child pornography could be found at his residence.  Finally, he argues that the magistrate was
without authority to sign the evidentiary search warrants.  Because the second warrant stemmed from the
first, Graves claims “it is poisoned fruit of the vehicle search tree” and
urges that all evidence obtained as a result of the second warrant should also
be suppressed.

            We
review a trial court’s decision on a motion to suppress evidence by applying a
bifurcated standard of review.  Rogers v. State, 291 S.W.3d 148, 151
(Tex. App.––Texarkana 2009, pet. ref’d); Elardo
v. State, 163 S.W.3d 760, 764 (Tex. App.––Texarkana 2005, pet. ref’d).  While we defer to the trial court on its
determination of historical facts and credibility, we review de novo its
application of the law and determination on questions not turning on
credibility.  Carmouche v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997); Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Rogers, 291 S.W.3d at 151; Elardo, 163 S.W.3d at 764.

            B.         The Trial Court Properly Admitted Burns’
Affidavits, Reports, and Recordings

            With
the exception of privileges, the Rules of Evidence do not apply to suppression
hearings because they involve the determination of preliminary questions.  Vennus
v. State, 282 S.W.3d 70, 72 n.1 (Tex. Crim. App. 2009); Granados v. State, 85
S.W.3d 217, 227 (Tex. Crim. App. 2002); Campbell
v. State, 910 S.W.2d 475, 480 (Tex. Crim. App. 1995) (hearsay is admissible
at suppression hearings to demonstrate probable cause to arrest).  Further, this Court has held that the right
of confrontation does not attach until trial. 
Ford v. State, 268 S.W.3d 620,
621 (Tex. App.––Texarkana 2008), overruled
on other grounds, No. 06-08-00046-CR, 2009 WL 3365661, at *3 (Tex. Crim.
App. Oct. 21, 2009) (“The prosecutor obviously understood appellant’s objection
because she responded appropriately:  Hearsay
is admissible in a pretrial suppression hearing; the Confrontation Clause does
not apply to a pre-trial suppression hearing.”).  This was also the holding of the Dallas Court
of Appeals in Vanmeter v. State, 165
S.W.3d 68, 74 (Tex. App.––Dallas 2005, pet. ref’d).  Many other jurisdictions have held that the
federal Confrontation Clause does not apply to preliminary hearings.  People
v. Felder, 129 P.3d 1072, 1074 (Colo. Ct. App. 2005); Gresham v. Edwards, 644 S.E.2d 122, 124 (Ga. 2007); State v. Rivera, 192 P.3d 1213, 1218 (N.M. 2008); 
Sheriff v. Witzenburg, 145 P.3d 1002, 1003 (Nev.
2006); State v. Woinarowicz, 720
N.W.2d 635, 641 (N.D. 2006).  Thus,
Graves’ first complaint––that the trial court erroneously denied his objections
to the affidavit, reports, and recording of Burns because they constituted
hearsay and violated his fundamental right of confrontation and
cross-examination under Crawford v.
Washington[3] fails. 

            C.        Search of the Vehicle Was Lawful  

            A
routine traffic stop closely resembles an investigative detention.  Berkemer
v. McCarty, 468 U.S. 420, 436–37 (1984). 
Because an investigative detention is a seizure that implicates the
United States and Texas Constitutions, the traffic stop must be reasonable.  U.S.
Const. amend. IV; Tex.
Const. art. I, § 9; Francis v.
State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996).  “If an officer has a reasonable basis for suspecting that a person has committed a
traffic offense, the officer may legally initiate a traffic stop.”  Zervos
v. State, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref’d).  Having an expired registration sticker is a
traffic offense.  See Tex. Transp. Code Ann.
§ 502.407 (Vernon Supp. 2009).

            The
Burns affidavit stated:

I stopped a vehicle . . . for an expired
registration sticker and when I was behind the vehicle and almost had it
stopped I observed an occupant throw a plastic drink cup out of the
window.  The vehicle was occupied by the
driver, James Dixon Graves, Jr., white male 61 years of age, Carol Noguera
white female 20 years of age and Aaron Seyfer white male 18 years of age. 

 

            .
. . . 

 

After Mr. Dixon [sic] exited the vehicle I smelled
an odor of alcohol.  The other two
occupants appeared to be under the age of 21 and were asked to exit the
vehicle.  I observed two-ice cup [sic] in
the console and a[n] ice cup in the storage container of the back seat.  I observed a bottle of alcohol on the
passenger floorboard after which I looked under both of the front seats and
found a 22 Derringer in a black bag under the driver seat.  At that time Mr. Graves was placed under
arrest for making alcohol available to a minor (I had already learned that both
of the other occupants were under the age of 21).  

 

            .
. . .

 

The minors were both convicted felons and were
arrested for felon in possession of firearm and minor in possession of alcohol.  

 

Burns had a reasonable basis for
suspecting Graves’ violation of the Texas Transportation Code.  Thus, we conclude the initial stop for the
expired registration sticker was lawful. 


            If
an officer develops a reasonable suspicion that criminal activity is occurring
during the course of a valid traffic stop, a continued detention is justified.  Zervos,
15 S.W.3d at 151.  An officer may rely on
all of the facts ascertained in the course of his or her contact with a
defendant to develop articulable facts that would justify continued
detention.  Powell v. State, 5 S.W.3d 369, 377 (Tex. App.––Texarkana 1999, pet.
ref’d).  Once a vehicle is stopped, an
officer is authorized to “question a passenger and request identification
without separate reasonable suspicion of the passenger.”  St.
George v. State, 237 S.W.3d 720, 722 (Tex. Crim. App. 2007); Duff v. State, 546 S.W.2d 283, 286 (Tex.
Crim. App. 1977).  

            Also,
the automobile exception to the Fourth Amendment requirement of a warrant for
search or seizure permits law enforcement to conduct a warrantless search of
the vehicle if:  (1) it is readily mobile
and; (2) there is probable cause to believe a crime has been committed and the
vehicle contains contraband.  Keehn v. State, 279 S.W.3d 330, 335
(Tex. Crim. App. 2009); Blaylock v. State,
125 S.W.3d 702, 705 (Tex. App.––Texarkana 2003, pet. ref’d).  Ready mobility of a vehicle creates an exigency.  Keehn,
279 S.W.3d at 335 (citing California v.
Carney, 471 U.S. 386, 393 (1985)). 
Probable cause to search requires that the officer have a reasonable
belief, based on facts and circumstances within his or her personal knowledge,
or of which the officer has reasonably trustworthy information, to warrant a
reasonably prudent person to conclude that items connected with criminal
activity will be found in a particular place. 
Ornelas v. United States, 517
U.S. 690, 696 (1996); Wiede v. State,
214 S.W.3d 17, 26 (Tex. Crim. App. 2007). 


            Burns
obtained the identification of Noguera and Seyfer, both underage and both
convicted felons.  He smelled alcohol on
Graves and observed two plastic cups inside the car in addition to the cup that
was thrown out of the window.  Noguera
told Burns the cup thrown out of the window belonged to Graves.  Testimony during the motion to suppress
hearing revealed that Graves knew Noguera and Seyfer were minors.  Burns had reasonable suspicion at that time
that Graves had furnished alcohol and was consuming alcohol while driving.  Tex.
Alco. Bev. Code Ann. § 106.06 (Vernon 2007); see McGee v. State, 105
S.W.3d 609, 614 (Tex. Crim. App. 2003). 
Based on the totality of the circumstances, we conclude the warrantless
search of the passenger compartment of the vehicle was justified.  

            Next,
a peace officer may arrest an offender without a warrant for any offense
committed in his or her presence or within the officer’s view.  Tex.
Code Crim. Proc. Ann. art. 14.01 (Vernon 2005).  During the search of the passenger
compartment of the vehicle for alcohol which produced an open container of
alcoholic beverage, Burns found a fully loaded handgun with five live rounds of
ammunition.  Noguera and Seyfer were
arrested for unlawful possession of a firearm by a felon, and Graves was
arrested for unlawfully carrying a weapon.[4]  Deputy Elizabeth Hall transported Noguera and
Seyfer to jail, and Danny Rainey arrived at the scene to assist with Graves’
arrest.

            At
that point, a tow truck was called, and Burns’ affidavit and report stated he
began an inventory search of the vehicle, including the trunk.  “When vehicles are impounded, local police
departments generally follow a routine practice of securing and inventorying
the automobiles’ contents.”  South Dakota v. Opperman, 428 U.S. 364,
369 (1976) (holding standard inventories pursuant to police policy
reasonable).  Inventories serve to
protect the owners’ property while in custody and protect the police from
claims, disputes, or danger.  Kelley v. State, 677 S.W.2d 34, 37 (Tex.
Crim. App. 1984); Garza v. State, 137
S.W.3d 878, 882 (Tex. App.––Houston [1st Dist.] 2004, pet. ref’d) (citing Opperman, 428 U.S. at 369); Madison v. State, 922 S.W.2d 610, 612
(Tex. App.––Texarkana 1996, pet. ref’d) (holding an inventory search of trunk reasonable
after an arrest for traffic violation). 
The inventory must be conducted in good faith pursuant to reasonable and
standardized procedure.  Garza, 137 S.W.3d at 882 (citing Colorado v. Bertine, 479 U.S. 367, 374 (1987)).  During a motion to suppress, the State bears
the burden of proving lawful impoundment. 
Delgado v. State, 718 S.W.2d
718, 721 (Tex. Crim. App. 1986).  It must demonstrate that the driver was
arrested, no alternatives other than impoundment were available to ensure the
automobile’s protection, the impounding agency had an inventory policy, and the
policy was followed.  Id.; see
Madison, 922 S.W.2d at 613.  

            In
this case, Graves’ passengers were arrested and taken to jail while Graves
stayed behind with Burns and Rainey. 
Where, as here, “[n]o other person was available to take custody of the
car . . . , impoundment was necessary to secure protection of the vehicle,”
which was stopped on the side of the road. 
Delgado, 718 S.W.2d at 721; Garza, 137 S.W.3d at 882 (“We note that
peace officers need not independently investigate possible alternatives to
impoundment absent some objectively demonstrable evidence that alternatives
did, in fact, exist.”).  Gleason
testified the Marion County Department of Public Safety had a policy to
inventory a vehicle if it needed to be towed. 
A “Texas Department of Public Safety Property Inventory” report was
filled out by Burns stating the vehicle would be taken and stored at Lohman’s
Wrecker Service in Jefferson, Texas.  The
inventory form instructs officers to mark the location of items found and gives
“trunk” as a standardized option.  Burns’
affidavit, report, and inventory form indicate he complied with the police
policy for inventory searches.  See Yaws
v. State, 38 S.W.3d 720, 722–24 (Tex. App.––Texarkana 2001, pet. ref’d) (upholding
inventory search at scene prior to impoundment where consistent with police
policy).  

            Therefore,
we conclude the search of the trunk, was an authorized inventory search. 

D.        The
Affidavit Was Sufficient for the Magistrate to Find Probable Cause that
Evidence of Violation of Obscenity
Law Was Probably Located in Graves’ Residence

 

            Because
“[n]o warrant to search any place or to seize any person or thing shall issue .
. . without probable cause,” an application for a search warrant must be
supported by an affidavit setting forth sufficient facts establishing probable
cause.  Tex.
Code Crim. Proc. Ann. art. 1.06 (Vernon 2005), art. 18.01(b) (Vernon
Supp. 2009).  The facts submitted to the
magistrate must justify a conclusion that the object of the search is probably
on the premises at the time the warrant is issued.  Cassias
v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986). 

            Our
review of whether probable cause existed for the issuance of the warrant is
limited to the four corners of the supporting affidavit.[5]  Rogers, 291 S.W.3d at 152; Elardo, 163 S.W.3d at 765 (citing Oubre v. State, 542 S.W.2d 875, 877 (Tex. Crim. App. 1976)).  Due to this limitation, “there are no
credibility choices to be made by the trial court in examining the sufficiency
of an affidavit to establish probable cause,” and we give great deference to
the magistrate’s probable cause determination and sustain the issuance of the
warrant if the magistrate had a substantial basis for concluding that a search
would uncover evidence of wrongdoing.  Burk v. State, 27 S.W.3d 651, 654 (Tex.
App.––Waco 2000, pet. ref’d); see Davis v. State, 202 S.W.3d 149 (Tex.
Crim. App. 2006); Swearingen v. State,
143 S.W.3d 808, 810 (Tex. Crim. App. 2004); Rogers, 291 S.W.3d at 151; Elardo, 163 S.W.3d at 765 (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)).  We interpret affidavits supporting warrants
in a common-sense and realistic manner because warrants should not be
invalidated through a “hypertechnical” interpretation of their supporting
affidavits.  Gates, 462 U.S. at 236; Rogers, 291 S.W.3d at 15; Elardo, 163 S.W.3d at 765 (citing Gibbs v. State, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991)).  The magistrate who reviews an affidavit may
draw inferences from the facts contained therein.  Elardo,
163 S.W.3d at 765.  “If in a particular
case it may not be easy to determine whether an affidavit demonstrates the
existence of probable cause, the resolution of such doubtful or marginal cases
should be largely determined by the preference to be accorded warrants.”  Id. (quoting
State v. Walker, 140 S.W.3d 761, 765 (Tex.
App.––Houston [14th Dist.] 2004, no pet.)). 


            The
relevant portions of Burns’ affidavit include:

I located 4 digital cameras, a video recorder, 2
pornographic tapes, 1 DVD player with pornographic DVD, and another
pornographic DVD.  The titles of the DVD’s
were “Cum Dumpster” and “Facial Shots” depicting a young female with male
ejaculate on her face.  Also found were 2
Camera tripods, a 14” Conair vibrator, condoms and viagra.  

 

            .
. . .

 

Noguera, the white female was 4’11” tall and
weighed 94 lbs and had the appearance of a girl approximately 16 years of age.  . . .  She
told me that they were on their way to Shreveport, Louisiana to spend the night
at a motel.  She stated that Graves was
going to pay her $150.00 to let Graves film her engaging in sexual acts with
her boyfriend, Seyfer.  She further
stated that she had known Graves for a long time; and that when she was 15
years of age he provided her with alcohol to which she drank.  She recalls waking up later and finding that
her pubic hair had been shaved.  This
occurred at his residence. . . .  

 

            .
. . .

 

She further stated that Graves had videoed [sic] taped
her engaging in sexual performances, sometimes alone and sometimes with other
actors.  The last such taping occurred
approximately 1 month ago.  She has also
brought another female name[d] Dessert to Graves house who was also petite and
the age of 18 to perform sexual acts on Graves. 
She has personal knowledge and has viewed pornographic pictures and
videos of individuals photographed by Graves which are concealed on the
premises.  She has observed these
pornographic pictures within the last 10 days. 
She has also heard him talk about downloading pornographic pictures on
the computer at the residence.  She has
also told this officer that she believes he has pornographic pictures and or
videos in the cameras which are located in his vehicle . . . . Noguera also
stated that there were in excess of 6 sexual devices in the residence. 

 

            While
the affidavit may not have established probable cause that Graves’ residence
contained child pornography, it did specifically state that the officer
believed the residence contained “pornography material in violation of penal
code section 43.23.”  That section,
entitled “Obscenity,” provides: “[a] person commits an offense if, knowing its
content and character, he:  (1) promotes
or possesses with intent to promote any obscene material or obscene device; or
(2) produces, presents, or directs an obscene performance or participates
in a portion thereof that is obscene or that contributes to its obscenity.”  Tex.
Penal Code Ann. § 43.23(c) (Vernon Supp. 2009).[6] “A
person who possesses six or more obscene devices or identical or similar
obscene articles is presumed to possess them with intent to promote the same.”  Tex.
Penal Code Ann. § 43.23(f) (Vernon Supp. 2009). 

            “Obscene”
means material or a performance that depicts or describes “patently offensive
representations or descriptions of ultimate sexual acts, normal or perverted,
actual or simulated, including sexual intercourse, sodomy” or “patently
offensive representations or descriptions of masturbation [or] excretory functions.”  Tex.
Penal Code Ann. § 43.21(1)(B) (Vernon 2003).  ‘“Obscene device’ means a device including a
dildo or artificial vagina, designed or marketed as useful primarily for the
stimulation of human genital organs.”  Tex. Penal Code Ann. § 43.21(7)
(Vernon 2003).  ‘“Patently offensive’
means so offensive on its face as to affront current community standards of
decency.”  Tex. Penal Code Ann. § 43.21(4) (Vernon 2003).  

            The
affidavit was sufficient to establish, at a minimum, that Graves possessed
obscene devices with intent to promote them.[7]  Also, because the trunk of Graves’ car
contained four digital cameras, two tripods, an electrical sex toy, and because
Noguera’s statements clarified that Graves had, and was going to film her
engaging in sexual activity, the issuing magistrate could have determined
Graves was producing or directing an obscene performance.  Because Noguera stated pornographic pictures
and videos of individuals photographed by Graves were concealed within his
residence at least ten days before the affidavit was signed, the magistrate had
probable cause to determine that obscene materials in violation of Chapter 43
of the Texas Penal Code were probably on the premises.  Thus, the trial court did not err in denying
Graves’ motion to suppress the evidence based on sufficiency of the warrant’s
supporting affidavit.  

            E.         Graves Did Not Meet His Burden to Show
False Statements Were in the Affidavit

            Graves alleges that
Burns’ affidavit contained “false and misleading statement, known by Trooper
Burns and the prosecutor to be false and misleading.”  The purported false information includes the
statement that Noguera revealed there were in excess of six sexual devices in
Graves’ residence, the residence may contain
pornographic material involving children, and Noguera appeared to be sixteen
years of age. 

            Graves
was required to make a “substantial preliminary showing that a false statement
knowingly and intentionally, or with reckless disregard for the truth, was
included by the affiant,” or that the false statement was “necessary to the
finding of probable cause.”  Franks v. Delaware, 438 U.S. 154, 155–56
(1978).  Gleason stated that he heard Noguera
say she only saw three or four sexual devices during her interview, which was recorded
on video.  However, he clarified that he
had conversations with Noguera which were not recorded in which she revealed
there were “a bunch” of sexual devices. 
Neither of these statements establish that Burns, who could have also
had conversations with Noguera which were not video recorded, included a false
statement knowingly, intentionally, or with reckless disregard for the
truth.  Also, the affidavit specifically
stated Noguera was twenty years of age, and the opinion that the residence may
contain evidence of child pornography was not demonstrated to be a false
statement of fact.  In any event, as
demonstrated above, none of the allegedly false statements were necessary to a
finding of probable cause.  If the
alleged false statements are excised from the affidavit, and it is still
sufficient to establish probable cause, an appellant’s challenge fails.  Ramsey
v. State, 579 S.W.2d 920, 922–23 (Tex. Crim. App. 1979).  Thus, Graves could not meet his preliminary
burden under Franks.  

            F.         The Magistrate Judge Had Authority to
Sign the Second Warrant

            Graves
complains that the magistrate judge was without authority to issue the second
search warrant in this case.  Article 18.02
enumerates items for which search warrants may be issued, including “obscene
materials kept or prepared for commercial distribution or exhibition,” “any
property the possession of which is prohibited by law,” and “implements or
instruments used in the commission of a crime.”  Tex.
Code Crim. Proc. Ann. art. 18.02(6), (8), (9) (Vernon 2005), art.
59.01(2) (Vernon Supp. 2009).  “Specific
items not listed in . . . [these subsections]  . . . may be
sought in a search warrant under the catch-all language of subsection (10),”
which authorizes warrants for “property or items . . . constituting
evidence of an offense or constituting evidence tending to show that a
particular person committed an offense.” 
Scott v. State, 868 S.W.2d
430, 432 (Tex. App.––Waco 1994, pet. ref’d); Tex.
Code Crim. Proc. Ann. art. 18.02(10) (Vernon 2005); see State v. Acosta, 99
S.W.3d 301, 303 (Tex. App.––Corpus Christi 2003, pet. ref’d); Lovely v. State, 894 S.W.2d 99, 102
(Tex. App.––Beaumont 1995, pet. ref’d);
Chavez v. State, 769 S.W.2d 284, 286 (Tex. App.––Houston [1st Dist.] 1989, pet.
ref’d); Martin v. State, 727 S.W.2d
820, 821 (Tex. App.––Fort Worth 1987, no pet.). 
Warrants issued under the subsection (10) catch-all are called
evidentiary warrants.[8]  Mullican
v. State, 157 S.W.3d 870, 873 (Tex. App.––Fort Worth 2005, pet. ref’d).  Generally, warrants issued under Article
18.02(10) must be issued by a “judge of a municipal court of record or a county
court who is an attorney licensed by the State of Texas, a statutory county
court judge, a district court judge, a judge of the Court of Criminal Appeals .
. . or a justice of the Supreme Court of Texas.”  Tex.
Code Crim. Proc. Ann. art. 18.01(c) (Vernon Supp. 2009).  

            However,
subsection (i) of Article 18.01 states: 

In a county that does not have a judge of a
municipal court of record who is an attorney licensed by the state, a county
court judge who is an attorney licensed by the state, or a statutory county
court judge, any magistrate may issue a search warrant under Subdivision (10)
or Subdivision (12) of Article 18.02 of this code. This subsection is not applicable
to a subsequent search warrant under Subdivision (10) of Article 18.02 of this
code.

 

Tex.
Code Crim. Proc. Ann. art. 18.01(i) (Vernon Supp. 2009); Muniz v. State, 264 S.W.3d 392, 396
(Tex. App.––Houston [1st Dist.] 2008, no pet.). 
The record demonstrated that Morris County did not have a municipal or
county judge who was a lawyer and that there was no statutory county
judge.    

            Graves
cites this Court to the last part of subsection (i) stating it is inapplicable
to subsequent search warrants under subsection (10) of Article 18.02.  However, there was no complaint that the
first warrant issued in this case was an evidentiary warrant.  In fact, the first warrant specified
subsections (6), (8), and (12) of Article 18.02.  Thus, even if we assume, without deciding,
that the second warrant was evidentiary, it would have been the first warrant
under subsection (10), which the magistrate judge would be authorized to issue
pursuant to Article 18.01, subsection (i). 


            This
point of error is overruled.  

III.       Sufficient Evidence
Established Ebert Was Disabled 

            Graves
only challenges the sufficiency of the jury’s finding that Ebert was
disabled.  When conducting a legal
sufficiency review, we view all the evidence in the light most favorable to the
verdict to determine whether any rational jury could have found the essential
elements of the offense beyond a reasonable doubt.  Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007); Lacour v. State, 8 S.W.3d 670, 671
(Tex. Crim. App. 2000) (citing Jackson v. Virginia, 443 U.S. 307 (1979)).  Evidence is factually insufficient when
examined under a neutral light only when it is so obviously weak as to
undermine confidence in the jury’s determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.  Zuliani v. State, 97
S.W.3d 589, 595 (Tex. Crim. App. 2003); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Harris
v. State, 133 S.W.3d 760, 764 (Tex.
App.—Texarkana 2004, pet. ref’d).  We give full play to the jury’s
responsibility to weigh the evidence, resolve conflicts in the testimony, and draw
reasonable inferences from basic facts.  Johnson,
23 S.W.3d at 7; Clewis v. State, 922 S.W.2d 126, 133 (Tex.
Crim. App. 1996). 

            Our analysis of whether the
evidence is legally and factually sufficient is measured against the elements
of the offense with the same kind of analysis as that applied in the test for a
hypothetically correct jury charge for the case.[9]  Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997); see also Grotti v. State, 273 S.W.3d 273, 280 (Tex.
Crim. App. 2008).  The hypothetically correct
jury charge “sets out the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof or unnecessarily restrict
the State’s theories of liability, and adequately describes the particular
offense for which the defendant was tried.” 
Malik, 953 S.W.2d at 240. 
It is used to evaluate both legal and factual sufficiency.  Grotti, 273 S.W.3d at 281.  

            “A
person commits an offense:  (1) if the
person:  (A) intentionally or knowingly:  . . .  (ii) causes the
penetration of the mouth of another person by the sexual organ of the actor,
without that person’s consent . . . (2) if:  . . . (C) the victim is [a] . .
. disabled individual.”  Tex. Penal Code Ann. § 22.021(a)
(Vernon Supp. 2009).  A disabled
individual is “a person older than 14 years of age who by reason or age or
physical or mental disease, defect, or injury is substantially unable to
protect himself from harm or to provide food, shelter, or medical care for
himself.”  Tex. Penal Code Ann. § 22.04(c)(3) (Vernon Supp. 2009).  

            Several
witnesses testified Ebert was disabled under the Penal Code including:  school nurse Martha Baker, who worked with
Ebert regularly over a period of several years, Officers Harrison and Larry
Fleet, and Ebert’s relative, Seyfer.  Baker,
Harrison, Fleet, Seyfer, and Noguera all stated Ebert was unable to take care
of her hygiene.  Baker specifically
stated about Ebert, “Any activities of daily living did not seem to stay with
her, and when I would consult with the mother on that on numerous occasions, we
discovered that she could not remember what had been taught as far as her daily
care and needs.”  Noguera testified there
were instances where Ebert would “put her bra on backwards,” indicating she was
even unable to dress herself.  These
witnesses did not believe Ebert would be able to protect herself from
harm.  Additionally, Seyfer stated Ebert
was unable to provide food, shelter, and medical care for herself.  Records from the Social Security Administration
and Texas Rehabilitation Commission demonstrated Ebert was diagnosed with
mental retardation, which her school district qualified as “moderate.”  Psychiatric reviews diagnosed her with autism
as well.  A report on Ebert conducted
when she was sixteen concluded she had first grade level reading, writing, and
math skills.  Where 100 was classified as
normal, Ebert’s verbal IQ score was forty-seven, performance scale was
fifty-four, and full IQ was forty-six. 
Baker testified Ebert’s results would not improve with age.  

            Viewing
this evidence in the light most favorable to the verdict, we conclude that a
rational jury could have found Ebert was disabled beyond a reasonable
doubt.  Hooper, 214 S.W.3d at
13.  Thus, we find the evidence was
legally sufficient for the issue to go before the jury.  

            Graves
offers the fact that Ebert was married and had children as contrary proof that
she “understood the nature and consequences of sexual activity.”  Thus, Graves suggests it was Ebert’s conscious
decision to return to Graves repeatedly to have sexual encounters with him in
exchange for money.  Graves highlighted
Baker’s cross-examination in which she acknowledged uncertainty in changes
concerning Ebert’s adaptive functioning when last evaluated at sixteen.  Finally, Graves pointed to a court’s previous
acceptance of Ebert’s guilty plea in a criminal case against her for engaging
in organized criminal activity.  

            We
do not find that the contrary proof demonstrates the verdict is manifestly unjust, shocks the
conscience or clearly demonstrates bias. 
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997).  The jury was aware of the
contrary evidence and could choose to disregard it.  Thus, keeping in mind the appropriate
deference to be given to the jury’s ability to weigh the evidence, we conclude
it was factually sufficient to establish disability under the Texas Penal
Code.  See generally Benton v. State,
237 S.W.3d 400 (Tex. App.––Waco 2007, pet. ref’d).  

IV.       The
Trial Court Did Not Deny Graves’ Request for an Expert and Ebert’s Competency Was
Not an Issue Since She Did Not Testify

 

            Graves contends
the trial court erred in denying him the funds to have Ebert examined to
determine if she was disabled and competent to testify.  The record demonstrates otherwise. 

            First,
the motion filed with the court did not ask that an expert decide whether Ebert
was disabled under the Texas Penal Code. 
Rather, the motion asked that the expert be allowed to determine if
Ebert was competent to testify.  Ebert
did not testify against Graves.  Because
there is no real controversy to resolve, the issue of competency is moot.[10]  

            During pretrial
hearings, counsel made the following request:

            So what we’re asking in that motion
is for the Court to allow what’s necessary to have an examination of at least
the records that relate to the performance, mental capacity, and so forth of
the complaining witness, Sharon Ebert, and that that be done by competent
expert, and I would think that would be a psychologist or psychiatrist and that
that would require, I believe, your Honor, first of all, gathering some records
to show what the history’s been.  

 

            It
may be an examination, and the examination might be foregone if the records
would give the expert enough information to make the determination.

 

            .
. . .

 

            So
we’re asking for a subpoena for those records, submit them to an expert, let
the Court order them to get us those records, and at least -- in the first stage
-- let an expert . . . determine whether the witness reaches a threshold, first
of all, of competency to testify and secondly, ability to consent, which still
may be a jury issue.

 

The court made the following
pronouncement:

And the Court, at this time, will -- I will not
order that an expert be allowed to physically examine the victim.  However, I am going to order that the
defendant -- if either the defendant has the ability to hire the expert and if
in the event the Court does not find that he does not have the ability, then
the Court will consider appointing an expert to at least review the records of
the victim.

 

. . . I would want your client to testify as to
whether or not he’s indigent or not.

 

Graves took the stand and
testified that he was unaware of his current income.  However, he stated that he received $2,800.00
per month from social security and the Veteran’s Administration, $750.00 per
month in royalty payments, had forty to fifty acres of land, and owned
furniture, motorcycles, and several vehicles. 
At the conclusion of the first pretrial hearing, the court instructed
Graves “to go ahead and tell [the requested expert] to get started on the
subpoenas of all those other issues.” 
Yet, the court did not rule on the issue of whether funds would be
available to Graves for use of the expert. 
Instead, the court asked for Graves “to sign a sworn affidavit to the
Court setting out all the properties and moneys [sic] he’s getting and his
income as well.”  

            At
the next pretrial hearing, Graves’ counsel stated, “I’ve come back to the court
with the prosecutor present and said that under the circumstances, the family
could pay for the expert if the Court could continue to provide counsel, and
that we would hire as a defense expert some psychologist.”  The expert chosen by Graves did not testify
until the punishment phase of the trial. 
Thus, Graves abandoned the request for funds to pay for an expert, and
the trial court complied with Graves’ request in ordering records be turned
over to the chosen expert.  

            We conclude this
point of error is without merit.  It is
overruled. 

V.        Graves Failed to Preserve Error
Regarding Any Improper Statements by the             State

 

            During trial, the
State played a video recording of Ebert engaging in sexual activity with
Graves.  While the video recording was
playing, the State said, “Judge, I think I’ve seen enough of it.”  Graves objected by stating the comment was
improper and intended to prejudice the jury. 
The State clarified, “What I mean is, Judge, I conclude my offer of the
tape and am willing to stop it at this time.” 
The court instructed the jury to disregard the State’s comment and subsequently
overruled Graves’ motion for mistrial.  

            A
mistrial is only required where an improper question or comment is clearly
prejudicial to the defendant and is of such character to suggest impossibility
of withdrawing the impression produced on the minds of the jury.  Ladd v.
State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).  It is not required where prejudice is cured
by an instruction to the jury to disregard. 
Ovalle v. State, 13 S.W.3d
774, 783 (Tex. Crim. App. 2000).  Counsel
has not provided this Court with any authority or harm analysis to support his
position that the State’s comments were “so prejudicial and suggestive to the
jury that it prevented the jury from making a fair assessment.”  We will presume the jury complied with the
court’s instruction to disregard and hold the trial court did not err in
overruling the motion for mistrial.  Wesbrook v. State, 29 S.W.3d 103, 116
(Tex. Crim. App. 2000).  The last point
of error is overruled.  

VI.       Conclusion 

            We
affirm the trial court’s judgments.  

 

                                                                                    Jack
Carter

                                                                                    Justice

                                    

Date Submitted:          February
5, 2010

Date Decided:             February
24, 2010

 

Publish











[1]Graves
appeals from this cause number and judgments entered in cause numbers
06-09-00064-CR through 06-09-00070-CR.  

 





[2]All
sections cited refer to the Texas Penal Code. 

 





[3]541
U.S. 36 (2004). 





[4]“A
person commits an offense if the person intentionally, knowingly, or recklessly
carries on or about his or her person a handgun in a motor vehicle that is
owned by the person or under the person’s control at any time in which:   . . . (2) the person is:  (A) engaged in a criminal activity, other
than a Class C misdemeanor that is a violation of a law or ordinance regulating
traffic” or is “prohibited by law from possessing a firearm.”  Tex.
Penal Code Ann. §
46.02(a-1)(2) (Vernon Supp. 2009). 
Furnishing alcohol to a minor is a class A misdemeanor.  Tex.
Alco. Bev. Code Ann. § 106.06.  “A
person who has been convicted of a felony commits an offense if he possesses a
firearm:  (1) after conviction and
before the fifth anniversary of the person’s release from confinement following
conviction.”  Tex. Penal Code Ann. §
46.04(a)(1) (Vernon Supp. 2009).  





[5]Because
appellate review only involves the four corners of the affidavit, Graves’
complaint that he did not have the opportunity to cross-examine Burns regarding
the facts contained therein has no merit. 





[6]We
note that this statute was held unconstitutional by Reliable Consultants, Inc. v. Earle a few days before the affidavit
was signed.  517 F.3d 738 (5th Cir.
2008).  However, as our sister court in Villarreal v. State stated, “Fifth
Circuit precedent is not binding on Texas courts, and its constitutional
pronouncements are highly persuasive at best.” 
267 S.W.3d 204, 208 (Tex. App.––Corpus Christi 2008, no pet.).  “This Court thus remains duty-bound, for
better or worse, to follow the rulings of the court of criminal appeals, which
has held -- in contrast to the Fifth Circuit -- that section 43.23 does not
violate the due process clause of the Fourteenth Amendment.”  Id. at
209.  Graves neither raised any
constitutional challenge to this statute, nor did he address the issue of
whether the affidavit was sufficient to establish that evidence of a violation
of this section would probably be found at Graves’ residence. 

 





[7]“Promote”
includes giving, providing, presenting, or exhibiting obscene material or
devices.  Tex. Penal Code Ann. §
43.21(a)(5) (Vernon 2003).





[8]Graves
complains that the second search warrant was evidentiary in nature.  Our ruling does not imply that it was.  





[9]Malik
controls "even in the absence of alleged jury charge error."  Gollihar v. State, 46 S.W.3d 243, 255
(Tex. Crim. App. 2001).  





[10]Graves
did not provide the court with any authority suggesting a trial court is
authorized to order an expert examination to determine competency of a witness,
a threshold determination which should be conducted by the trial judge.  Caselaw suggests courts are without authority
to “force a complaining witness to submit to such an invasion of her right to
privacy.”  State ex rel. Holmes v. Lanford, 764 S.W.2d 593, 594 (Tex.
App.––Houston [14th Dist.] 1989, orig. proceeding) (conditionally granting
mandamus relief from trial court order requesting State to produce witness to
subject her to psychological evaluation for competency); see In re State ex rel.
Robinson, 116 S.W.3d 115 (Tex. App.––Houston [14th Dist.] 2002, orig.
proceeding) (same).