Michael Gerald MARTIN, Appellant,

v.

The STATE of Texas, State.

No. 2–86–205–CR.

Court of Appeals of Texas,
Fort Worth.

April 2, 1987.

Max Blankenship (on appeal only), Fort Worth, for appellant.

Brock R. Smith, Dist. Atty., Decatur, for State.

Before FARRIS, KELTNER and LATTIMORE, JJ.

OPINION

FARRIS, Justice.

Appellant, Michael Gerald Martin, appeals from a conviction by the jury for the

offense of attempted manufacture of a controlled substance, to wit: methamphetamine, in an amount of 400 grams or more. *See* TEX.PENAL CODE ANN. sec. 15.01(a) (Vernon Supp.1987); TEX.REV.CIV.STAT. ANN. art. 4476–15, secs. 1.02(21), 4.011, 4.031 (Vernon Supp.1987). Punishment was assessed by the jury at 75 years confinement in the Texas Department of Corrections and a $250,000.00 fine.

We affirm.

At approximately 11:00 a.m. on April 15, 1985, the Wise County Sheriff's Department received information from an informant regarding the operation of a clandestine laboratory in a house located at Route 1, Box 195, Rhome, Texas. King Barnett, a criminal investigator for the Wise County District Attorney, Chief Deputy Leroy Burch, and Sheriff Ray Aaron, went to the suspected location where they observed two men burning trash in barrels located near the house. The odor of an operating drug laboratory was detected by the three officers. A deputy was placed near the house to conduct a surveillance while a search warrant was prepared for a search of the residence. The search warrant was obtained from a Justice of the Peace and the warrant was executed at approximately 6:00 p.m. that same day. As the officers drove up to the house, one of the two men was sitting on the front porch and the other was walking out the door. As soon as the person walking out the door saw the officers coming, he immediately turned around and ran back into the house. When the person sitting on the front porch saw the officers, he too got up and ran into the house. Deputy Burch arrested appellant in the living room of the residence, and after a brief search of the house, Barnett found Glenn Howard Cotton hiding in a small closet located at the back of the house. Inside the house, the officers discovered a clandestine drug laboratory set up in one of the back rooms. Testimony revealed that the house was leased to, and electric service was in the name of, Gary Don Lindley.

In his first point of error, appellant alleges that "[t]he evidence is not sufficient to support a Judgment of Conviction for the offense alleged in the Indictment." In his argument to this point of error, however, appellant also claims that the trial court erred in overruling his objections to all of the State's evidence shown to have been seized pursuant to the execution of the search and arrest warrant and his motion to suppress said evidence. Appellant asserts that such evidence was illegally obtained by virtue of an invalid search warrant because the issuing magistrate, a Justice of the Peace, was not authorized to issue a valid search warrant to seize "mere evidence" under TEX.CODE CRIM.PROC. ANN. arts. 18.01(c), 18.02(10) (Vernon Supp.1987). Appellant argues that, had the trial judge not erred in overruling his motion to suppress evidence illegally obtained and his objections to the admission of the items seized, and had such evidence been suppressed during trial, there would be no evidence at all to support a conviction of appellant as charged in the indictment.

■ After examining the search warrant contained in the record, it is clear that the warrant was not an article 18.02(10) "evidentiary" search warrant, but was instead a search warrant ordered for the seizure of drugs and equipment used in manufacture and production of such drugs pursuant to article 18.02(2), (7) and (9). Article 18.02(2), (7) and (9) authorizes the issuance of a search warrant for "property specially designed, made, or adapted for or commonly used in the commission of an offense; ... drugs kept, prepared, or manufactured in violation of the laws of this state; ... implements or instruments used in the commission of a crime; ..." The requirements applicable to "evidentiary" search warrants, i.e., the requirement of article 18.01(c) that only a judge of a statutory county court, district court, Court of Criminal Appeals, or the Supreme Court, may issue such warrant, is not applicable to this warrant. We hold that the search warrant was properly issued, such evidence was validly seized, and turn our discussion to the sufficiency of the evidence upon which appellant's conviction was based.

■ In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App.1983) (opinion on reh'g). A conviction cannot be sustained if the evidence leaves any reasonable doubt as to the guilt of the accused. *Jackson v. Virginia,* 443 U.S. 307, 317–18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560, 572–73 (1979). Thus, it follows that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Jackson,* 672 S.W.2d at 803.

The indictment in this case charged that appellant

did then and there while acting as a party with Glenn Howard Cotton and Gary Don Lindley intentionally and knowingly, with the specific intent to commit the offense of unlawful manufacture of a controlled substance, to-wit: Methamphetamine, in an amount of more than four hundred (400) grams including adulterants and dilutants, do an act, to-wit: attempt to manufacture said controlled substance by means of chemical synthesis by a clandestine laboratory at a habitation located at Route 1, Box 195, Rhome, Wise County, Texas, and said act amounted to more than mere preparation that tended but failed to effect the commission of said offense of unlawful manufacture of methamphetamine.

Investigator Barnett testified as to the observation of the residence and the events surrounding the procuring and executing of the search warrants as stated above. He further testified that a "clandestine drug lab" is an illegal lab set up for the purpose of manufacturing illegal narcotics or controlled substances. He stated that the residence in question was located at Route 1, Box 195, Rhome, Wise County, Texas. He testified that the odor detected as coming from the house is the same such odor that he has smelled on at least 24 different occasions prior to this occasion and is an odor that is not associated with any other type of process except for the manufacture of amphetamine or methamphetamine. Barnett identified appellant from a photograph, and in court during jury selection, as the same person he observed burning trash and who ran into the house as the officials arrived, where he was arrested. He also identified Glenn Cotton as the other person burning trash and later arrested while hiding in the back closet.

Glenn Carl Harbison, a chemist for the Texas Department of Public Safety Crime Laboratory, testified that he was experienced in analyzing chemical substances. He stated that he arrived at the residence, cut off the laboratory and took samples of the chemical substances. The samples were analyzed and found to be phenyl two propanone, a substance used in the manufacture of methamphetamine when combined with methylamine. Harbison testified that this laboratory was in the process of manufacturing P2P and that all the materials were present for the completion of the manufacture of methamphetamine. Based on the amount of chemicals observed, the size of the beakers, and the size of the laboratory itself, the chemist estimated that approximately 9,000 grams of methamphetamine would have been produced had the laboratory not been interrupted. Harbison further stated that the manufacturing process had gone beyond mere preparation.

■ Although the lease for the residence and electric bill were not under appellant's name, we nevertheless hold that the evidence presented at trial was sufficient to support the conviction of appellant for the offense as alleged in the indictment. Point of error number one is overruled.

Appellant's second point of error complains of the trial court's failure to instruct the jury during trial to make no inference

of guilt from appellant's absence at trial. On May 7, 1986, appellant was present when the jury was selected and sworn, with jury trial beginning the next day. When appellant failed to appear on the second day of trial, the trial commenced in his absence. After overruling appellant's motion for continuance, the following discourse took place:

[DEFENSE ATTORNEY]: Before the jury comes in we would move the Court to instruct the jury panel to make no inference and draw no inference from the Defendant's absence, no inference as to his guilt and take it as a circumstance of his guilt, the fact that he's not here.

THE COURT: I think that that would be appropriate to put in the written charge, if—

[PROSECUTOR]: Well, Judge, I think flight to avoid prosecution is sometimes evidence of guilt.

THE COURT: I think, that—what I'll rule—I won't tell them that right now, but I will certainly consider whether or not it should be put in the charge. And I may allow it in the charge and may not allow it in the charge, but I don't think it would be appropriate to say anything now about it.

■ Once appellant voluntarily absented himself from trial, the trial court did not commit error in overruling his motion for continuance and proceeding to the trial's conclusion. *Stokes v. State*, 701 S.W.2d 54, 56 (Tex.App.—Houston [14th Dist.] 1985, no pet.). Appellant cites no authorities, nor could we find any, to support his claim that the trial court *must* instruct the jury, prior to the making of the State's opening statement, not to draw any inference of the defendant's guilt from his absence at trial. The only case cited by appellant, *Aguirre v. State*, 695 S.W.2d 793 (Tex.App.—San Antonio 1985, no pet.), simply noted that the trial court orally instructed the jury concerning the defendant's absence, but did not suggest that such an oral instruction was required. Conversely, appellant's flight from prosecution is sometimes a circumstance from which an inference of guilt may be drawn. *See McWherter v. State*, 607 S.W.2d 531, 535 (Tex.Crim.App.1980); *Bogert v. State*, 681 S.W.2d 822, 824 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd).

■ It should also be noted that although the trial judge ruled that he would not instruct the jury during trial as requested by appellant, he did state that he would entertain a request that such instructions be included in the jury charge. However, appellant's own brief admits that "No Defense Written Objections were made to the Court's Charge to the Jury for failure to so instruct the Jury." Absent an objection to the charge, only fundamental error will be considered on appeal. *Henderson v. State*, 617 S.W.2d 697, 698 (Tex.Crim.App.1981); *White v. State*, 610 S.W.2d 504, 507 (Tex.Crim.App.1981). We hold that any error which might have resulted from the trial court's failure to so instruct the jury did not create an egregious harm and was not fundamental. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g). Point of error two is overruled.

Judgment affirmed.