Opinion filed October 6, 2005















 
 
  
 
 







 
 
  
 
 




Opinion filed October 6, 2005

 

                                                                        In The

                                                                              

                     Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00012-CR 

 

                                                    __________

 

                               ROBERT RYERSON RIGGS, Appellant

 

                                                             V.

 

                                    THE
STATE OF TEXAS,
Appellee

 



 

                                          On
Appeal from the 29th District Court

 

                                                      Palo Pinto County, Texas

 

                                                   Trial
Court Cause No. 12,512

 



 

                                                                   O
P I N I O N

 

A jury convicted Robert Ryerson Riggs of
manufacturing a controlled substance, metham-phetamine, in an amount over 400
grams.  The trial court assessed punishment
at 60 years imprisonment and a fine of $20,000. 
We affirm. 

                                                                  Issue
on Appeal

In his sole issue, appellant contends that the
evidence was factually insufficient to prove that he manufactured
methamphetamine.








                                                               Standard
of Review

 To
determine if the evidence is factually sufficient, we must review all of the
evidence in a neutral light and determine whether the evidence supporting guilt
is so weak that the verdict is clearly wrong and manifestly unjust or whether
the evidence supporting guilt is so strong that the beyond-a-reasonable-doubt
burden of proof could not have been met. 
Zuniga v. State, 144 S.W.3d 477 (Tex.Cr.App.2004); Ross v.
State, 133 S.W.3d 618 (Tex.Cr.App.2004); Vasquez v. State, 67 S.W.3d
229, 236 (Tex.Cr.App.2002); Cain v. State, 958 S.W.2d 404
(Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126
(Tex.Cr.App.1996).  The jury, as the
trier of fact, was the sole judge of the credibility of the witnesses and of
the weight to be given to their testimony. 
TEX. CODE CRIM. PRO. ANN. arts. 38.04 & 36.13 (Vernon 1979 &
1981).

                                                                  Evidence
at Trial

On January 18, 2004, Deputy Gary Morris and
Department of Public Safety Troopers Don Stoner and Trace Lattimore went to the
Parkview Mobile Home Park in Mineral Wells acting on an anonymous tip that
appellant was cooking methamphetamine. 
Upon arrival, all three officials smelled ether, a chemical used to
manufacture methamphetamine, emanating from the mobile home.  Deputy Morris then knocked on the door and
secured written consent to search the premises from the lessee.  

Upon entering the dwelling, Deputy Morris and
Trooper Lattimore found two containers smelling of ether in the bathroom, which
where later confirmed to contain methamphetamine.  Immediately adjacent to the bathroom, they found
appellant, lying half-on and half-off the bed either asleep or passed out.  Appellant was awoken and searched.  He had approximately a dozen blister packs of
pseudoephedrine in his shirt pocket, a key ingredient for manufacturing
methamphetamine.  In the bedroom closet
near where appellant was found, a trooper found used coffee filters[1]
containing methamphetamine powder and a third container of fluid with ether and
pseudoephedrine pills, which was also tested later to confirm that it held
methamphetamine.








At that point, Deputy Morris called the Cross
Timbers Narcotics Task Force, secured the scene, and turned the investigation
over to Sergeant Richard Ferguson.  Ferguson, a sergeant of
the Graham Police Department and a member of the Cross Timbers Narcotics Task
Force, collected and tagged the evidence including empty packages of batteries[2]
from the kitchen trash and a number of small plastic bags commonly used to
package and sell methamphetamine.  He
also found a black bag on the bed where appellant was lying that contained two
bags of marihuana and two bags of methamphetamine.  Additionally, Sergeant Ferguson found a loaded gun under the edge of
the mattress where appellant was lying. 
In the kitchen cabinet, a Marlboro cigarette box with a baggie
containing white powder and two syringes was found.  Other methamphetamine accessories were
collected as evidence including tin foil, small aquarium hoses, a Sudafed box
stuffed with coffee filters, muriatic acid,[3]
and a syringe loaded with methamphetamine. 
William Chandley, a forensic chemist 
with the Department of Public Safety in Abilene, testified that the evidence tested
positive for the presence of methamphetamine, in an amount exceeding 400 grams.


                                                                        Analysis

The State had the burden to prove beyond a
reasonable doubt that appellant knowingly manufactured methamphetamine in an
amount of 400 grams or more.  TEX. HEALTH
& SAFETY CODE ANN. '
481.112(a) & (f) (Vernon 2003).  To
sustain a conviction, the State had to affirmatively link the defendant either
to an interest in the place where manufacturing was taking place or to the
actual act of manufacturing. See Martin v. State, 727 S.W.2d 820, 822
(Tex.App. - Fort Worth 1987, no pet=n);
East v. State, 722 S.W.2d 170, 171-72 (Tex.App. - Fort Worth 1986, pet=n ref=d);
Chapin v. State, 671 S.W.2d 608, 610-12 (Tex.App. - Houston [1st Dist.]
1984, no pet=n).  AManufacture@ is defined as the production,
preparation, propagation, compounding, conversion, or processing of any
controlled substance other than marihuana by the extraction from substances of
natural origin, chemical synthesis, or the combination thereof.  TEX. HEALTH & SAFETY CODE ANN. ' 481.002(25) (Vernon Supp. 2004 - 2005). 








Appellant concedes that he was in possession of
methamphetamine but argues that there was only speculation linking himself and
the manufacturing of the drug.  Appellant,
however, was clearly aware of his surroundings that contained evidence of
methamphetamine manufacturing all around given the presence of the ingredients
and the strong smell that could be smelled from the outside of the mobile home.  Sergeant Ferguson testified before the jury that he
could smell ether before entering the residence and that the Ainside just reeked of it.@

Appellant carried a dozen packs of a key
ingredient in his shirt pocket and had a loaded gun immediately beneath the bed
he was lying on.  There was testimony
that officers routinely found firearms where drugs were being sold or
manufactured.  Sergeant Ferguson also
testified that the three containers with ether and pseudoephedrine, which were
part of the manufacturing process, could have Apowdered
out@ more methamphetamine.  The presence of the ether-filled containers
and ingredients is more consistent with manufacturing than simply possession of
the final product. 

A jury could have reasonably concluded that
appellant was involved in the manufacturing process of methamphetamine taking
place around him.  We hold that the
evidence is factually sufficient to support the jury=s
verdict.  We overrule appellant=s sole issue.         

                                                                The
Court=s Ruling

The judgment of the trial court is affirmed. 

 

 

TERRY
McCALL                                                              

JUSTICE

 

October 6, 2005

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel consists of:  Wright,
C.J., and McCall, J.

 

 











[1]During the methamphetamine manufacturing process,
coffee filters are commonly used to filter powder out of the methamphetamine.





[2]Batteries contain lithium metal which, when combined
with anhydrous ammonia, will melt into the crushed up pseudoephedrine pills and
will be converted to methamphetamine.  





[3]Commonly used as a drain cleaner, but also for Apowdering out@
methamphetamine from a liquid solvent.