**Irvin NOTIAS, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 01–15–00636–CR**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued March 22, 2016

Joseph W. Varela, Houston, TX, for Appellant.

Devon Anderson, District Attorney-Harris County, Heather A. Hudson, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice Radack and Justices Keyes and Higley.

## OPINION

Laura Carter Higley, Justice

Appellant, Irvin Notias, was found guilty by a jury of the offense of aggravated robbery.[1] After finding one enhancement allegation to be true, the jury assessed punishment at 40 years in prison. Appellant raises two issues on appeal. He asserts that the trial court erred by refusing to instruct the jury that Appellant's voluntary absence during trial could not be evidence of his guilty, and he asserts that he received ineffective assistance of counsel at trial.

We affirm.

### Background

At around 8:35 a.m. on November 21, 2013, Tammy Watkins and her fiancé, Jermaine Ward, were at home getting ready for work. Ward was talking on the phone near the kitchen, and Watkins was in the bedroom. Suddenly, four men, including Appellant, burst into their home. Each of the men had a firearm. They ordered Ward to lie on the floor. They asked for money and demanded to know Watkins's location in the home. Ward told the men that he was home alone. The men began searching through the cabinets and the closet.

Meanwhile, Watkins heard the intrusion, and she heard what the men were saying to Ward. She grabbed her phone, her puppy, and a handgun and locked herself in the bedroom closet. Watkins called 9-1-1 and reported the home invasion. The police were dispatched. Watkins stayed on the phone with the 9-1-1 operator for about five minutes before hanging up.

Watkins heard one of the intruders kick in her bedroom door. He said that he would kill Ward if she did not show herself.

The 9-1-1 dispatcher then called Watkins back. The home's caller identification system displayed "Harris County 9-1-1" on the television screen in the living room. The intruders saw the display and knew that law enforcement had been called. The four men fled the house, taking Ward's phone and Watkins's purse.

Ward retrieved Watkins from the closet, and he took the handgun that she had. Ward went outside and saw that three of the intruders were fleeing in an SUV. Appellant fled on foot. At the same time, the police were approaching the scene. Ward saw a police car pursuing the SUV.

Ward jumped in his vehicle and began pursuing Appellant, who was running away. Ward soon caught up to Appellant. The two men exchanged gunfire, and Appellant continued to flee on foot.

---

1. *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 2011), § 31.03(a) (Vernon Supp.2015).

Two of the other intruders got out of the SUV and fled on foot. The police set up a perimeter and brought in K–9 units to search the area. During the search, Appellant was found hiding in bushes by one of the police dogs. Ward identified Appellant at the scene as one of the intruders. Appellant told Ward at the scene that he should have killed Ward.

Appellant was charged with the offense of aggravated robbery. Jury selection in the case was conducted on June 29, 2014. The next day each side made opening statements, and the State began presenting its witnesses. After it had presented four witnesses, trial was recessed for lunch. The trial court instructed everyone to be back in the courtroom at 2:00 p.m. Appellant did not return to the courtroom at 2:00. Appellant's counsel told the trial court that he had informed Appellant to be back at 2:00. Counsel also stated that he had tried to reach Appellant on the phone and had called Appellant's bonding company.

At 2:15, the trial court decided to resume trial in Appellant's absence. When the jury returned to the courtroom, the trial court told the jury as follows:

> Ladies and Gentlemen the Defendant's not present in the courtroom. He's not returned from the lunch break and under Texas law the trial can proceed without him. And so I'm not willing to keep you waiting any longer so we're going to go ahead and proceed in the absence of the Defendant.

The record indicates that the trial court issued a capias for Appellant's arrest.

When trial continued that day, the State presented its last witness, both sides rested, and the court held the charge conference. During the conference, Appellant's counsel asked for two jury instructions. First, he requested that the jury be given a lesser-included offense instruction. The

trial court asked on what basis counsel felt Appellant was entitled to that instruction. Counsel responded, "Well, the basis would have been the testimony of my client." Counsel then stated, "Secondly, I would ask the Court to give an instruction that the absence of the Defendant should not be taken as evidence of guilt in the underlying offense." The trial court denied both requested instructions.

Each side then made closing arguments. The case went to the jury, which found Appellant guilty that same day.

The punishment phase of trial also began that day in Appellant's absence. The punishment phase continued the next day, July 1, 2014. The State presented evidence at the punishment phase showing that Appellant was out of jail on a $50,000 bail bond at the time of trial. One condition of his bond required him to appear for all court settings. After hearing the evidence, the jury assessed Appellant's punishment at 40 years in prison.

The record shows that Appellant appeared in court for his sentencing hearing on July 14, 2014. At sentencing, no explanation was given for Appellant's absence during trial. The trial court sentenced Appellant in accordance with the jury's verdict. Appellant did not file a motion for new trial.

Appellant now appeals the judgment of conviction. He raises two issues.

### Jury Instruction

In his first issue, Appellant asserts that the trial court erred when it refused his request to instruct the jury that his voluntary absence from trial could not be used as evidence of his guilt.

### A. Standard of Review

When reviewing claims of jury-charge error, we first determine whether

an error actually exists in the charge. *See Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim.App.2005). We review a trial court's decision not to submit an instruction in the jury charge for an abuse of discretion. *Wesbrook v. State,* 29 S.W.3d 103, 122 (Tex.Crim.App.2000). A trial court does not abuse its discretion when its decision is within the zone of reasonable disagreement. *See Casey v. State,* 215 S.W.3d 870, 879 (Tex.Crim.App.2007). Specifically, a trial court does not abuse its discretion in refusing to submit a requested charge or instruction that is not in accordance with the law or constitutes an incorrect statement of the law. *See Traylor v. State,* 43 S.W.3d 725, 730–31 (Tex.App.—Beaumont 2001, no pet.).

## B. Analysis

■ In his brief, Appellant acknowledges that his absence from trial was voluntary. Appellant does not dispute that the trial court appropriately continued with trial after he chose to absent himself from the proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 33.03 (Vernon 2006). Instead, Appellant asserts that the trial court erred because it refused to instruct the jury that it could draw no adverse inference of guilt from his absence.

To support his charge-error assertion, Appellant relies on an observation made in *Vasquez v. State,* 680 S.W.2d 626, 629 (Tex. App.—Corpus Christi 1984, no pet.). There, the court observed that a jury may not infer guilt from a defendant's voluntary absence. *See id.* Appellant fails to recognize, however, that the observation was made in the context of determining

whether the trial court erred when it did not instruct the jury that it could not infer guilt from a voluntarily absent defendant's *failure to testify.*[2] *See id.* Unlike here, the issue in *Vasquez* was not whether a court should instruct the jury that it cannot make an inference of guilt from the fact that a defendant voluntarily absented himself from trial.

We note that, in a later opinion—*Garcia v. State*—the Corpus Christi Court of Appeals rejected the same argument that Appellant makes here; that is, it rejected the notion that its observation in *Vasquez* supports a requirement that a trial court must instruct the jury not to infer guilt from a defendant's voluntary absence. *See Garcia v. State,* No. 13–13–00547–CR, 2014 WL 7205263, at *2 (Tex.App.—Corpus Christi Dec. 18, 2014, pet. ref'd) (mem.op.) (not designated for publication). As here, the appellant in *Garcia* relied on the observation made in *Vasquez* to support his claim that the trial court should have instructed the jury not to draw an adverse inference from his voluntary absence at trial. *See id.* Rejecting this claim, the *Garcia* court noted that it had "made [the *Vasquez]* observation in the context of considering a separate question: whether a voluntarily-absent defendant was entitled to an instruction at both phases of the trial against drawing negative inferences from his failure to testify." *Id.* Thus, *Vasquez* is not useful when determining whether a trial court should instruct a jury not to infer guilt from a defendant's voluntary absence at trial.

In this case, the defendant has elected not to testify and you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him.

---

**2.** We note that, in this case, the jury was instructed as follows:

A defendant may testify in his own behalf if he elects to do so. This, however, is a right accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him.

Appellant cites no authorities, nor could we find any, to support his claim that the trial court must instruct the jury not to infer guilt from a defendant's absence; however, our research finds *Martin v. State* to be instructive. 727 S.W.2d 820, 823 (Tex.App.—Fort Worth 1987, no pet.). In *Martin,* the defendant was present for the first day of his trial but failed to return the second day. *Id.* Defense counsel asked the trial court to instruct the jury that it could draw no inference of guilt from the defendant's absence; the court denied the request. *Id.* The appellate court affirmed the judgment of conviction, noting there are circumstances in which flight from prosecution permits an inference of guilt. *Id.* (citing *McWherter v. State,* 607 S.W.2d 531, 535 (Tex.Crim.App. 1980)).

In addition, we are mindful that "a defendant may not create reversible error by his own manipulation." *Beasley v. State,* 634 S.W.2d 320, 321 (Tex.Crim.App.1982). Illustrating this precept, we have held that, when a defendant is removed from the courtroom during trial because of his own disruptive behavior, a trial court does not err in refusing to instruct the jury not to consider the defendant's absence. *George v. State,* 446 S.W.3d 490, 503 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

We hold that the trial court did not abuse its discretion when it denied Appellant's request to instruct the jury that his voluntary absence from trial could not be used as evidence of his guilt. We overrule Appellant's first issue.

## Ineffective Assistance of Counsel

In his second issue, Appellant asserts that he received ineffective assistance of counsel during the guilt-innocence phase of trial.

### A. Applicable Legal Principles

To prevail on a claim of ineffective assistance of counsel, an appellant must show the following: (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984); *Lopez v. State,* 343 S.W.3d 137, 142 (Tex.Crim.App.2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State,* 187 S.W.3d 475, 482–83 (Tex.Crim.App.2006).

Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State,* 973 S.W.2d 954, 956–57 (Tex.Crim.App.1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State,* 301 S.W.3d 675, 687 (Tex.Crim.App. 2009).

A silent record that provides no explanation for counsel's actions will generally not overcome the strong presumption of reasonable assistance. *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim. App.2005). Absent an opportunity for trial counsel to explain his or her actions, appellate courts should not hold that counsel rendered ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* In the rare case in which trial counsel's ineffectiveness is ap-

parent from the record, an appellate court may address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. The record must, however, demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of counsel's subjective reasoning. *Id.*

### B. Analysis

█ In his brief, Appellant asserts that his trial counsel's performance was deficient because counsel did not strike "a venireman who unequivocally expressed her inability to set aside her bias concerning appellant's Fifth Amendment right not to testify." Appellant points to the following exchange between his trial counsel and a member of the venire, identified as Juror No. 2:

> [Trial counsel]: The law says he has a right not to testify and if a person is on trial and does not testify you cannot hold that against him. You cannot consider that for any purpose. Can you follow the law? ... How about row three. Anyone on row three? Anyone else who hadn't—Juror No. 2 what do you think?
>
> [Juror No. 2]: I don't think I'd be able to.
>
> [Trial counsel]: Is that a yes or no?
>
> THE COURT: I can't hear you.
>
> [Juror No. 2]: No.

Trial counsel did not challenge for cause or exercise a peremptory strike against Juror No. 2, and she served on the jury.

The Court of Criminal Appeals has recognized that the Sixth Amendment right to an impartial jury is "subject to waiver (or even forfeiture) by the defendant in the interest of overall trial strategy." *State v. Morales*, 253 S.W.3d 686, 697 (Tex.Crim.

App.2008). "Indeed, the [Texas] Legislature has expressly made a defendant's right to challenge a prospective juror for cause on the basis of an actual bias subject to waiver." *Id.* (citing Tex. Code Crim. Proc. Ann. art. 35.16(9), (11)). The court reasoned, "[B]ecause it is a right which is to be exercised at the option of the defendant, it is also subject to the legitimate strategic or tactical decision-making processes of defense counsel during the course of trial." *Id.*

In *Delrio v. State*, trial counsel for the defendant, who was on trial for possession of cocaine with intent to deliver, did not challenge for cause, or exercise a peremptory strike against a panel member who had stated during voir dire that he was a former narcotics officer, knew the defendant by way of his employment, and could not be fair and impartial. 840 S.W.2d 443, 443–45 (Tex.Crim.App.1992). The admittedly biased panel member then served on Delrios's jury. *Id.* at 445. On appeal, Delrio asserted that he had received ineffective assistance of counsel because trial counsel had failed to strike the panel member for cause. *See id.* at 444.

The court recognized that a single partial juror will vitiate a conviction; however, the right to trial by impartial jury is subject to waiver or forfeiture by the defendant in the interest of overall trial strategy. *Id.* at 445–47; *see also State v. Morales*, 253 S.W.3d 686, 697 (Tex.Crim. App.2008). The *Delrio* court recognized that a "[w]aiver of [a] client's right to insist that every juror in the case be in all things fair and impartial may in counsel's best professional judgment have been an acceptable gamble." *Delrio*, 840 S.W.2d at 447. The court noted it could "envision circumstances" under which counsel might have "justifiably chosen not to exercise a challenge for cause or peremptory strike against a venireman who deemed himself

incapable of serving on the jury in a fair and impartial manner." *Id.* at 446. The court concluded that, on a record that did not reveal counsel's reasoning, it "must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066); *Morales,* 253 S.W.3d at 696–98 (citing *Delrio* when holding defendant's counsel was not ineffective for failing to exercise peremptory challenge, after challenge for cause denied, against panel member who was an assistant district attorney in office prosecuting defendant).

Here, there was no motion for new trial, and the record is otherwise silent regarding the motivations of counsel for not challenging or striking Juror No. 2. *See Delrio,* 840 S.W.2d at 446; *see also Jackson v. State,* 877 S.W.2d 768, 771–72 (Tex.Crim. App.1994) (holding that presumption that defendant had received effective assistance of counsel at trial was not rebutted by silent record in case in which trial counsel's motivation for failing to challenge or strike juror, who had expressed bias against defendant, was unknown). On this record, we cannot exclude the possibility that trial counsel had a strategic reason for not striking or challenging Juror No. 2.

As the State points out, it is possible that, during voir dire, trial counsel anticipated that Appellant would testify at trial, rendering Juror No. 2's bias less relevant. We note this theory is supported by the record. During the charge conference, trial counsel requested a lesser included offense instruction. When the trial court questioned counsel regarding the basis for such an instruction, counsel replied, "Well, the basis would have been the testimony of my client." This provides some indication

that counsel believed that Appellant had planned to testify had he not absented himself from trial.

During voir dire, counsel may have decided that seating Juror No. 2 was "an acceptable gamble" in light of other considerations known to him during voir dire, including the possibility that Appellant would testify. *See Delrio,* 840 S.W.2d at 447. In any event, although Juror No. 2 expressed a potential bias, according to the precedent of the Court of Criminal Appeals, to which we are bound, this is not sufficient to overcome the presumption that trial counsel exercised reasonable professional judgment during jury selection. *See Delrio,* 840 S.W.2d at 446–47; *see also Morales,* 253 S.W.3d at 696–98.

In short, trial counsel has not been given a chance to explain his actions. We cannot say that trial counsel's decision not to challenge Juror No. 2 was so outrageous that no competent attorney would have reached that decision. *See Delrio,* 840 S.W.2d at 446; *see also Goodspeed,* 187 S.W.3d at 392. For these reasons, we conclude that Appellant has not demonstrated his trial counsel's performance fell below an objective standard of reasonableness; thus, he has not satisfied the first *Strickland* prong. We hold that Appellant has failed to show, by a preponderance of the evidence, that he received ineffective assistance of counsel at trial. *See Strickland,* 466 U.S. at 687–88, 694, 104 S.Ct. at 2064, 2068.

We overrule Appellant's second issue

### Conclusion

We affirm the trial court's judgment.