**Opinion filed February 10, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00025-CR

_____

### RICHARD WAYNE EDGAR, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 28034A**

## M E M O R A N D U M   O P I N I O N

The jury convicted Richard Wayne Edgar of the second-degree felony offense of assault family violence. *See* TEX. PENAL CODE ANN. § 22.01(b-3) (West Supp. 2021). The trial court assessed his punishment at confinement for a term of six years in the Institutional Division of the Texas Department of Criminal Justice. In two issues, Appellant challenges the sufficiency of the evidence to support his conviction and the effectiveness of his trial counsel. We affirm.

*Background Facts*

W.W. and Appellant were in a romantic relationship and they lived together. On September 2, 2018, they visited a "game room" in Taylor County. W.W. had won some money, but she refused to cash out and give some to Appellant when he ran out of money. She testified that this act upset Appellant. W.W. continued playing games for awhile before deciding to go home. As she was leaving, W.W. was unable to locate Appellant. W.W. returned to their home on Fannin Street in Abilene where both she and Appellant resided, and she immediately went to bed.

The next day, W.W. woke up around noon to find Appellant eating a bowl of cereal. She could tell that Appellant was upset. Appellant made W.W. a bowl of cereal and immediately began asking W.W. to hand over her phone. W.W. testified that she refused to hand over her phone because Appellant had recently smashed another one of her phones and she feared that if she did hand over her phone, she would be unable to call 9-1-1 if the need were to arise. When W.W. refused to hand over her phone, Appellant became angrier. W.W. tried calming Appellant, but she quickly realized that her efforts were futile.

After refusing to hand over her phone, W.W. put her pants on, crouched down beside the bed, and started praying. While she was praying, Appellant grabbed a steel pole and grabbed W.W. W.W. testified that she did not remember Appellant hitting her with the pole. W.W. initially testified that she did not know what happened to the pole, but she later testified that she discovered the pole underneath the bed.

Appellant came from behind W.W. and began choking her. W.W. testified that Appellant placed his full body weight on her, which completely prevented her from breathing. Appellant then picked W.W. up, carried her upside down from the bedroom to the living room, and slammed her down on the floor. After dropping

W.W. headfirst onto the floor, Appellant covered her nose and mouth, which prevented her from breathing.

Appellant eventually released W.W., and she fled to her neighbor's house. Once there, W.W. used her neighbor's phone to call 9-1-1. Officer Hunter Haught responded to W.W.'s call for service. W.W. informed Officer Haught that Appellant had just assaulted her. Notably, during her conversation with Officer Haught, W.W. was only wearing jeans and a T-shirt. Officer Haught initially did not notice any physical marks on W.W. from the assault. However, he later observed marks on W.W.

W.W. also spoke with Sergeant Aron Bryan. Sergeant Bryan noticed that W.W. had a bump on the back of her head and markings on her neck and arm. From Officer Haught's conversation with W.W., and from her own conversation with W.W., Sergeant Bryan believed the officers had enough information to arrest Appellant. Before the call for service was completed, a paramedic spoke with W.W. and observed that W.W. did not have any bruising. In spite of not seeing any bruising, the paramedic asked W.W. if she wanted to go to the hospital. W.W. responded that she did not.

*Analysis*

In Appellant's first issue, he challenges the sufficiency of the evidence to support his conviction. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

3

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514, S.W.3d 227, 232 (Tex. Crim. App. 2017).

The indictment and the application paragraph of the trial court's charge tracked the relevant statute by alleging that Appellant intentionally, knowingly, and recklessly caused bodily injury to W.W., a member of his family or household with whom he has or had a dating relationship, by impeding the normal breathing or

circulation of the blood of W.W. by applying pressure to the throat or neck of W.W. or by blocking her nose or mouth. *See* PENAL § 22.01(a)(1), (b-3).

Appellant premises his challenge to the sufficiency of the evidence on conflicts within the evidence. Specifically, Appellant alleges that the following matters are conflicting: photographic evidence shows only one bowl of cereal, but W.W. testified that both she and Appellant were eating separate bowls of cereal; Officer Haught testified that no metal pole was recovered from the scene, but W.W. testified that she recovered the metal pole with which Appellant attacked her; W.W.'s jeans would have had spilled milk on them if W.W.'s testimony was true; and the physical impossibility of W.W.'s claim that Appellant carried her upside down by her neck from the bedroom to the living room.

Under the *Jackson* standard, we are to view all of the evidence "in the light most favorable to the verdict." *Brooks*, 323 S.W.3d at 899 (citing *Jackson*, 443 U.S. at 319). The jury is solely responsible for resolving conflicts in the evidence. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Appellant also asserts that the evidence is insufficient because there was a lack of any visible physical injury to W.W. Specifically, Appellant relies on the testimony of the paramedic that W.W. "felt fine and didn't need any assessment." Appellant asserts that the lack of physical injury, coupled with inconsistencies in W.W.'s testimony, renders the evidence insufficient to support his conviction.

We first note that the Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." PENAL § 1.07(a)(8) (West 2021). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). Furthermore, "obstructing or impeding a person's ability to breath[e] impairs a person's physical

condition [and is] a form of bodily injury" for purposes of assault family violence. *Marshall v. State*, 479 S.W.3d 840, 844 (Tex. Crim. App. 2016). Thus, "any hindrance, obstruction, or impediment for any amount of time to one's breathing or blood flow is *per se* a bodily injury and therefore sufficient to satisfy family-violence assault." *Philmon v. State*, 609 S.W.3d 532, 537 (Tex. Crim. App. 2020) (discussing the holding in *Marshall* and noting that "[t]his is an exceptionally low bar").

Irrespective of Appellant's claim that W.W. suffered no physical injuries, the State elicited testimony and introduced photographic evidence to the contrary. Both Officer Haught and Sergeant Bryan testified that they noticed markings on W.W. Additionally, the State introduced photographic evidence of physical markings on W.W.'s head, neck, and face. Further, the paramedic testified that in nonfatal strangulation cases, one may not always see shortness of breath, petechia, or bruising on the victim.

W.W. testified that Appellant impeded her breathing on two separate occasions. First, W.W. testified that Appellant strangled her in the bedroom to the point where she was unable to breath. Second, W.W. testified that Appellant carried her to the living room where he covered her nose and her mouth, thus rendering her unable to breath. Generally, the testimony of a single eyewitness can be enough to support a conviction. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). In this case, the jury's decision to believe W.W.'s account of the assault was inherently a credibility determination to which we defer under the *Jackson* standard of review. Viewed in the light most favorable to the verdict, we hold that there is sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Appellant committed assault family violence against W.W. We overrule Appellant's first issue.

In Appellant's second issue, he asserts that he received ineffective assistance of counsel. Specifically, Appellant contends that his trial counsel was ineffective

for failing to make a challenge for cause on an allegedly biased juror. To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

We note at the outset that Appellant did not file a motion for new trial. Thus, trial counsel has not had an opportunity to explain or defend his trial strategy in response to the matter that Appellant contends was deficient. The manner in which trial counsel exercises challenges for cause is inherently a matter of trial strategy

7

based upon "counsel's best professional judgment." *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992); *see Screws v. State*, 630 S.W.3d 158, 164–65 (Tex. App.—Eastland 2020, no pet.). On a record that does not reveal counsel's reasoning, we "must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that [counsel] 'made all significant decisions in the exercise of reasonable professional judgment.'" *Delrio*, 840 S.W.3d at 447 (quoting *Strickland*, 466 U.S. at 690); *see State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008); *Screws*, 630 S.W.3d at 164–65.

Appellant contends that his trial counsel was ineffective because he failed to challenge Juror Stone for cause. Stone responded to a question from the prosecutor to the venire panel wherein she indicated that she either had been the victim of family violence or knew someone that had been a victim of family violence. She stated that "[i]t was my sister and I and it was my stepfather." Stone stated that her sister "got the worst of it." When asked whether she could be fair and impartial, Stone answered, "I hope so." When the prosecutor later sought clarification and asked Stone if she could be fair and impartial, Stone answered, "I think." The prosecutor followed up by asking, "Will you be fair and impartial?" Stone replied, "I will."

Appellant contends that the record clearly shows the strategy of trial counsel—to "strike jurors who experienced assault family violence and voiced doubt as to whether they could remain fair and impartial as a result." Even assuming that this was trial counsel's strategy, the record is silent as to why trial counsel chose to not make a challenge for cause against Stone. As noted in *Delrio*, trial counsel may have had strategic or tactical reasons for not challenging Stone for cause. For example, trial counsel may have believed that Stone was a favorable juror for Appellant. Moreover, Stone ultimately stated that she would be fair and impartial. In the absence of an opportunity to respond to Appellant's allegation of ineffective conduct, we must presume that Appellant received effective assistance of counsel.

*See Goodspeed*, 187 S.W.3d at 392. Trial counsel's performance was not so deficient that no competent attorney would have engaged in it. *See Notias v. State*, 491 S.W.3d 371, 377–78 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (involving a silent record and a claim that the trial counsel failed to challenge a veniremember for cause after the veniremember explicitly stated that she could not be fair and impartial). We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


February 10, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.