**Opinion issued May 28, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00358-CR

————————————

**BRIAN ANTHONY CLAUDIO-RUIZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1729166**

## MEMORANDUM OPINION

A jury convicted Brian Anthony Claudio-Ruiz of the first-degree felony offense of aggravated sexual assault of a child.[1] The trial court assessed Claudio-

---

[1] *See* TEX. PENAL CODE § 22.021(a)(1)(B)(v).

Ruiz's punishment at thirty-five years' confinement. The court also imposed a $100 "Child Abuse Prevention Fine" and assessed $520 in court costs.

In three issues on appeal, Claudio-Ruiz contends that (1) his trial counsel rendered ineffective assistance by failing to challenge a prospective juror for cause after she indicated she could not be fair and impartial; (2) this Court should modify the judgment to remove $157 in court costs; and (3) the trial court improperly assessed the "Child Abuse Prevention Fine," which does not apply to offenses committed before January 1, 2020.

We modify the judgment and affirm as modified.

## Background

A grand jury indicted Claudio-Ruiz for aggravated sexual assault of a child, D.C., his younger half-sister. The only facts concerning the offense itself that are relevant to the appellate issues relate to when the offense allegedly occurred. The indictment alleged that the offense occurred "on or about March 1, 2011."[2] The complainant, who was born in 1998, testified that Claudio-Ruiz sexually abused her

---

[2] The jury charge informed the jury that the State was not required to prove that the offense occurred on the date alleged in the indictment. Rather, "[i]t is sufficient if the State proves beyond a reasonable doubt that the offense was committed on or after November 23, 2010, the date of the defendant's seventeenth birthday, and before September 29, 2021, the date the indictment was filed." The complainant testified that the last incident of abuse occurred around March 2011. She was 20 or 21 when she reported the abuse to police. She did not have "any type of relationship" with Claudio-Ruiz at the time of her report.

over the course of several years, from when she was eight years old to twelve years old. That time frame roughly corresponds to 2006 through 2011.

The other facts relevant to this appeal occurred during voir dire. During the trial court's portion of voir dire, it read the indictment and asked the prospective jurors about several different legal concepts. It then asked the venire whether they had personal experience with the subject matter of the case:

> I understand that the nature of this subject matter is very difficult to talk about, and I don't want to talk about it if you-all have any sort of prior experiences with this. Okay? But here's what I am going to ask you, because I want to be cognizant of the fact that people have lived life before today, and you have experiences that might preclude you from being a fair and impartial juror in this case. First part of my question is: Do you have an experience with this subject matter as a victim, or will you—or you yourself were accused or you know somebody who has been falsely accused. So that's part one, okay, do you have the experience? And the second part of this question is, if your answer is yes, can you set that aside, listen to the facts in this case, and be fair and impartial to either side. Okay? First part, do you have the experience one way or another. You have been affected by it, either you were a victim, you had to testify in a trial, you know someone close to you who has been, and because of that, you can be fair in a case like this, or you can't be fair in a case like this. So two-part. Everybody understand? You have the experience, and can you be fair. Row one, I need you to raise your cards if you have the experience.

On the first row, 9 out of 15 people raised their cards, and the court questioned each of them about their answers to the two questions. When the court asked Juror 12, they answered, "No and yes." The court clarified that Juror 12 did not "have the experience," and when Juror 12 confirmed they did not have personal experience, the court reminded the panel that "the question is only if you have had the

3

experience." The court questioned the panel row-by-row, asking the prospective jurors if they "have the experience." On the third row, five prospective jurors raised their juror cards, but Juror 45 did not.

When the court reached the end of the panel, it asked whether it missed anyone and ended up questioning four additional prospective jurors, including Juror 45:

The Court: Anybody I missed? Did I miss somebody? Raise your hand.

Juror 44: Yes and no.

The Court: What? 44, was that your response, or 45?

Juror 44: I was yes and no, and also for you, she didn't answer.

The Court: Okay. Ladies and gentlemen, hold on. Only raise your juror card number when I get to your row and tell me what your response is. So if you did not raise your juror card number at this—when I just went through your rows, please raise your hands now. Who did not—who did not raise their hand when I first asked? What is your number? And I need your juror card number.

Juror 18: 18, and no. And to be fair, yes. I didn't have that experience.

The Court: And you can be fair. 24?

Juror 24: My answer is because I didn't have the experience, so I didn't want to just answer just based—

The Court: Okay.

Juror 24: Because the question was if I have the experience would I be fair or not.

The Court: Okay.

Juror 24: I do not have the experience, so I chose not to answer.

The Court: Okay. Well, can you be fair?

4

Juror 24:    Yes, ma'am, definitely.

The Court:   Okay. Now, anybody else? 44, I don't have you down. Are you now saying you're raising your hand?

Juror 44:    Yes.

The Court:   Okay.

Juror 44:    Yes and no.

The Court:   And 45?

Juror 45:    No and no.

The court did not question Juror 45 any further and moved on to a new topic.

At the close of voir dire, the trial court and the parties went row-by-row and discussed challenges for cause. For the third row, the court stated that it had five jurors that it intended to strike for cause, but it did not name Juror 45. Defense counsel stated, "I have also No. 45 saying they couldn't be fair." Neither the prosecutor nor the trial court had Juror 45 on their lists of potential challenges for cause. Following this discussion, the court brought two prospective jurors to the bench for further questioning at defense counsel's request, but Juror 45 was not one of them.

Before the parties made their peremptory strikes, the trial court and defense counsel returned to Juror 45's ability to be fair:

Counsel:     Judge, on my note pad, I have No. 45 saying or at least implying that they couldn't be fair.

The Court:   We're not going based on implications. Are there any cause questions that were asked from either the Court's,

5

> the State's, or the Defense's voir dire where this witness—this panel member said that he could not be fair?
>
> Counsel: I have it written down, Judge, that they did it during the State's voir dire that he said he couldn't be fair.
>
> The Court: I don't have that. I don't have that. And I remember 44 raising their hand when I asked fair and impartial, and I said who is raising their hands, is it 44 or 45? 44 did not raise—excuse me. 45 did not raise her hand. It was only 44.

Neither the State nor defense counsel exercised a peremptory strike against Juror 45, and she was ultimately selected as a juror.

The jury found Claudio-Ruiz guilty of aggravated sexual assault of a child, and the trial court assessed his punishment at thirty-five years' confinement. The judgment of conviction imposed a $100 "Child Abuse Prevention Fine" and assessed $290 in court costs and $130 in reimbursement fees. The "Criminal Bill of Cost" assessed $520 in court costs, including $185 for "Consolidated Court Cost – State," $105 for "Consolidated Court Cost – Local," and $100 for "Child Abuse Prevention."

Claudio-Ruiz did not move for a new trial. This appeal followed.

**Ineffective Assistance of Counsel**

In his first issue, Claudio-Ruiz argues that his trial counsel rendered ineffective assistance of counsel when he failed to challenge Juror 45 for cause. Alternatively, he argues that if this Court concludes that trial counsel *did* challenge

Juror 45 for cause, counsel rendered ineffective assistance by failing to preserve this challenge for appellate review.

## A.    Standard of Review

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). To prevail on a claim that counsel was ineffective, the defendant must show that his counsel's performance was constitutionally deficient and that the deficiency prejudiced him. *Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023). A defendant's "[f]ailure to succeed on either prong is fatal to the ineffectiveness claim." *Id.* The defendant bears the burden to establish ineffective assistance by a preponderance of the evidence. *Ex parte Salinas*, 664 S.W.3d 894, 909 (Tex. Crim. App. 2022).

"An attorney is deficient if his performance falls below an objective standard of reasonableness under the prevailing professional norms, considering the facts of the case viewed from counsel's perspective at the time of the representation." *Ex parte Lane*, 670 S.W.3d at 671; *Ex parte Salinas*, 664 S.W.3d at 909 ("Counsel performs deficiently if he has 'made errors so serious' that it cannot be said he functioned as the 'counsel' guaranteed by the Sixth Amendment." (quoting *Strickland*, 466 U.S. at 687)). We presume that counsel rendered adequate assistance to the defendant and "made all significant decisions in the exercise of reasonable

7

professional judgment." *Ex parte Salinas*, 664 S.W.3d at 909; *see Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (stating that defendant must overcome "strong presumption" that counsel's actions "might be considered sound trial strategy" (quotation omitted)). We evaluate counsel's performance as of the time of his conduct, "not through 'the distorting effects of hindsight.'" *Ex parte Salinas*, 664 S.W.3d at 909 (quoting *Strickland*, 466 U.S. at 689–90); *Hart*, 667 S.W.3d at 782 (stating that we make deficiency determination "in light of all the circumstances").

Counsel's deficient performance is prejudicial "only if those errors were so serious as to deprive the defendant of a fair trial, that is, a trial whose result is reliable." *Ex parte Salinas*, 664 S.W.3d at 909. The defendant must show that but for counsel's deficient performance, a reasonable probability exists that the result of his trial would have been different. *Id.* A "reasonable probability" is "one sufficient to undermine confidence in the outcome." *Id.* at 909–10.

An ineffective assistance claim must be "firmly rooted in the record." *Hart*, 667 S.W.3d at 782. Usually, the record on direct appeal is not sufficient to show that counsel's representation was "so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Id.* (quotation omitted). Courts should ordinarily afford counsel an opportunity to explain his conduct "before being denounced as ineffective." *Id.* When counsel is not given such an opportunity and the record on

direct appeal is undeveloped, courts usually assume that a strategic motive exists "if any can be imagined" and conclude that counsel's performance was deficient "only if the conduct was so outrageous that no competent attorney would have engaged in it." *Id.* (quotation omitted). "Counsel's actions are considered deficient only if the court finds, as a matter of law, that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* (quotation omitted).

## B.     Challenging a Juror for Cause

"A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." TEX. CODE CRIM. PROC. art. 35.16(a); *see* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."). Either the State or the defense may challenge a prospective juror for cause if the juror "has a bias or prejudice in favor of or against the defendant," and the defense may make a challenge for cause if the juror has a bias or prejudice against any of the applicable law upon which the defense is entitled to rely. TEX. CODE CRIM. PROC. art. 35.16(a)(9), (c)(2). The trial court must excuse the prospective juror "if bias or prejudice would impair the juror's ability to carry out his oath and instructions in accordance with the law." *Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014).

To preserve error concerning a trial court's erroneous denial of a challenge for cause, the defendant must show that: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of prospective juror; (3) his peremptory challenges were exhausted; (4) his request for additional peremptory challenges was denied; and (5) an objectionable juror sat on the jury. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010); *see also Comeaux*, 445 S.W.3d at 749 (requiring that defendant demonstrate same five steps to establish harm from erroneous denial of challenge for cause).

## C.    Whether Trial Counsel was Ineffective for Failing to Challenge Juror 45 for Cause

The Sixth Amendment's right to an impartial jury, "like any other right," may be waived or forfeited "by the defendant in the interest of overall trial strategy." *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008); *see* TEX. CODE CRIM. PROC. art. 35.16(a) (providing that while certain statutory bases for challenges for cause cannot be forfeited, "[a]ll other grounds for challenge," including whether prospective juror has bias or prejudice in favor of or against defendant, "may be waived by the party or parties in whose favor such grounds of challenge exist"). Whether to make or preserve a challenge for cause is "subject to the legitimate strategic or tactical decision-making processes of defense counsel during the course of trial." *Morales*, 253 S.W.3d at 697; *Hebert v. State*, 489 S.W.3d 15, 23 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Decisions relating to challenging

10

prospective jurors for cause or striking prospective jurors are strategic and tactical.").

The Court of Criminal Appeals has declined to find that trial counsel rendered ineffective assistance when counsel, in a possession with intent to deliver case, did not challenge a prospective juror—a former narcotics officer—who indicated that he knew the defendant "by virtue of [his] employment," agreed that he "probably would not be able to be a fair and impartial juror," and stated that he "couldn't be impartial." *Delrio v. State*, 840 S.W.2d 443, 444–45 (Tex. Crim. App. 1992) (per curiam). The court could not say "that under no circumstances could defense counsel justifiably fail to exercise a challenge for cause or peremptory strike against a venireman who deemed himself incapable of serving on the jury in a fair and impartial manner." *Id.* at 446. Rather, the court could conceive several possible strategic reasons for why defense counsel did not challenge the juror. *Id.* at 446–47. On the silent record, although the court did not "know whether counsel for appellant in fact utilized this or any other particular strategy" in not challenging the juror, it also could not say "with any confidence" that counsel "was not functioning within prevailing professional norms." *Id.* at 447 (quotation omitted). The court therefore

found "insufficient basis in the present record to overcome" the presumption that counsel acted within the bounds of reasonable professional judgment.[3] *Id.*

Here, the parties first dispute whether defense counsel challenged Juror 45 for cause. Claudio-Ruiz argues that defense counsel did not make such a challenge and that this failure constituted ineffective assistance because despite first stating that she did not have personal experience with the subject matter of the case, Juror 45 then stated that she could not be fair and impartial. The State argues that trial counsel twice attempted to challenge Juror 45 for cause, pointing to the two discussions

---

[3]     The Court of Criminal Appeals—like this Court—has followed *Delrio* and repeatedly declined to find ineffective assistance when trial counsel did not challenge a possibly biased juror for cause (or did not preserve error by following up an unsuccessful challenge for cause with a peremptory challenge) but nothing in the record indicated that the choice was not strategic or tactical. *See, e.g.*, *State v. Morales*, 253 S.W.3d 686, 698 (Tex. Crim. App. 2008) ("If it is permissible for trial counsel to retain a juror who is *actually* biased for strategic or tactical reasons, then *a fortiori*, trial counsel must be permitted to make a strategic or tactical decision to retain a juror who is only *presumably* biased by virtue of her status as an assistant district attorney."); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) ("The record in the instant case [a robbery] is also silent as to why appellant's trial counsel failed to challenge venire member Supinski [who stated that he had been a victim of a robbery and believed that experience "probably would" impact his impartiality]. . . . To hold trial counsel's decision not to strike or challenge venire member Supinski in the instant case as ineffective assistance would also call for speculation. The record in the instant case lends no support for such holding."); *Notias v. State*, 491 S.W.3d 371, 377–78 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (concluding that defendant did not establish deficient performance prong of *Strickland* when trial counsel did not challenge or strike prospective juror who expressed bias against defendant's Fifth Amendment right not to testify because, on silent record, Court could not exclude possibility of strategic motivation and counsel's decision was not so outrageous no competent attorney would have reached that decision).

defense counsel had with the trial court in which they disagreed concerning Juror 45's statement and her impartiality.

Regardless of whether defense counsel either did not challenge Juror 45 for cause (as Claudio-Ruiz contends) or *did* challenge Juror 45 for cause (as the State contends) but did not prevail on this challenge and then failed to preserve error by exercising a peremptory challenge against Juror 45, the analysis is the same. The decision not to challenge for cause or peremptorily strike an actually or presumably biased prospective juror can be a reasonable strategic choice. *See id.* at 446–47 (failing to challenge actually biased prospective juror for cause); *Morales*, 253 S.W.3d at 698 (following unsuccessful challenge for cause, failing to preserve any error by peremptorily striking presumably biased prospective juror).

Jury selection can be highly dependent on subtle visual cues and differences in juror demeanor, considerations that do not typically make their way into an appellate record. *See, e.g.*, *Nieto v. State*, 365 S.W.3d 673, 680 (Tex. Crim. App. 2012) (stating, in context of *Batson* challenge, that "the demeanor of a potential juror is a valid reason to exercise a peremptory strike"); *cf. Tracy v. State*, 597 S.W.3d 502, 512 (Tex. Crim. App. 2020) ("We review a trial court's ruling on a challenge for cause with considerable deference because the trial judge is in the best position to evaluate a veniremember's demeanor and responses."). It is possible that upon learning that the trial court did not agree that there was a basis to challenge Juror 45

for cause due to partiality, counsel decided not to press the point or exercise a peremptory strike against Juror 45 because she was preferable to other options among the prospective jurors remaining on the venire. *See Morales*, 253 S.W.3d at 698 ("[T]he trial court could rationally infer that the appellant's trial attorneys made a difficult tactical decision to leave Wyatt on the jury because, even though she was an assistant district attorney, she was still preferable to the other prospective jurors against whom they exercised their allotted peremptory challenges.").

Claudio-Ruiz attempts to distinguish this case from *Delrio* and its progeny, arguing that unlike the silent record in those cases, here, "the record is not silent as to trial counsel's belief that Juror Number 45 stated that she could not be fair." Claudio-Ruiz is correct that trial counsel stated on the record that he did not believe Juror 45 could be fair and impartial based on Juror 45's response to the trial court's question. However, Claudio-Ruiz did not raise ineffective assistance in a motion for new trial, and therefore the record *is* silent concerning counsel's motivation or reasoning for not challenging Juror 45, whether through a challenge for cause or peremptory strike. And that is the relevant consideration under *Delrio. See* 840 S.W.2d at 447 ("Of course we do not and cannot know whether counsel for appellant in fact utilized this or any other particular strategy. . . . Consistently with *Strickland*, we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in

14

the exercise of reasonable professional judgment." (quotation omitted)); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) ("The record in the instant case is also silent as to why appellant's trial counsel failed to challenge venire member Supinski. . . . Due to the lack of evidence in the record concerning trial counsel's reasons for not challenging or striking venire member Supinski, we are unable to conclude that appellant's trial counsel's performance was deficient.").

The failure to challenge a prospective juror—even an actually biased prospective juror—can be part of a reasonable trial strategy. Here, trial counsel was not given an opportunity to explain his rationale for not challenging Juror 45. On this record, we cannot say that counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *See Hart*, 667 S.W.3d at 782 (quotation omitted). We conclude that Claudio-Ruiz has not met his burden to overcome the strong presumption that his counsel's actions constituted sound trial strategy and establish by a preponderance of the evidence that his trial counsel's performance fell below an objective standard of reasonableness. *See id.* at 781. We hold that Claudio-Ruiz has not established that his trial counsel rendered ineffective assistance.

We overrule Claudio-Ruiz's first issue.

**Assessment of Court Costs and Fines**

In his second and third issues, Claudio-Ruiz challenges the trial court's imposition of two court costs and a fine: $185 for "Consolidated Court Cost – State"; $105 for "Consolidated Court Cost – Local"; and $100 for "Child Abuse Prevention Fine."

## A. State and Local Consolidated Court Costs

The Local Government Code contains provisions mandating the payment of certain costs and fees upon conviction of an offense. Section 133.102(a)—the State Consolidated Court Cost—requires "[a] person convicted of an offense" to pay $185 as a court cost "on conviction of a felony." TEX. LOC. GOV'T CODE § 133.102(a)(1). Section 134.101(a)—the Local Consolidated Court Cost—requires, "in addition to all other costs," a person convicted of a felony to pay $105 as a court cost on conviction. *Id.* § 134.101(a).

In his appellate brief, Claudio-Ruiz argues that the judgment and the criminal bill of cost were erroneous in two respects. First, although he agrees that imposition of the State Consolidated Court Cost was appropriate, he disagrees with the amount. He argues that section 133.102(a) had been amended in 2019 to raise the amount of the cost from $133 to $185, but in doing so, the Legislature specified that the change applied only to a cost "on conviction for *an offense committed on or after the effective date of this Act*," January 1, 2020. *See* Act of May 23, 2019, 86th Leg.,

16

R.S., ch. 1352, §§ 1.03, 5.01, 5.04, sec. 133.102(a), 2019 Tex. Gen. Laws 3981, 3982, 4035 (emphasis added). Because he committed the offense in March 2011, at the latest, the prior version of section 133.102(a) controlled, and the proper amount of this cost was $133, not $185. Second, he argues that the Local Consolidated Court Cost should not have been imposed at all because that cost requirement was first enacted by the 2019 Legislature and, again, only applied to offenses committed on or after January 1, 2020. *See id.* §§ 1.05, 5.01, 5.04, sec. 134.101, 2019 Tex. Gen. Laws at 3985, 4035. The State initially agreed that we should reduce the amount of the State Consolidated Court Cost and delete the Local Consolidated Court Cost.

Days after the State filed its appellate brief, the Court of Criminal Appeals issued *Bradshaw v. State*, which addressed the proper amount of the State Consolidated Court Cost when a defendant commits an offense before—but is convicted after—the 2019 amendments became effective. *See* 707 S.W.3d 412 (Tex. Crim. App. 2024). In that opinion, the court construed the enabling language of the 2019 amendments to section 133.102(a) and the language of Government Code section 51.608, a statute providing that "[n]otwithstanding any other law that establishes the amount of a court cost" collected in a criminal proceeding "based on the law in effect on the date the offense was committed, the amount of a court cost imposed on the defendant in a criminal proceeding must be the amount established *under the law in effect on the date the defendant is convicted of the offense*." *See*

17

TEX. GOV'T CODE § 51.608 (emphasis added). The court concluded that section 51.608 trumps the enabling language of the 2019 amendments. *Bradshaw*, 707 S.W.3d at 417. Thus, "anyone who committed an offense before 1/1/2020 but is convicted after 1/1/2020 . . . is subject to the current version of the Cost Act." *Id.* at 418.

Under *Bradshaw*,[4] we must apply the version of section 133.102(a) in effect at the time of Claudio-Ruiz's conviction in May 2024. The criminal bill of cost therefore properly imposed a $185 State Consolidated Court Cost. *See* TEX. LOC. GOV'T CODE § 133.102(a). Similarly, because section 134.101 was in effect at the time of Claudio-Ruiz's conviction, the bill of cost properly imposed a $105 Local Consolidated Court Cost. *See Joseph v. State*, No. 01-23-00937-CR, 2025 WL 714982, at *3 (Tex. App.—Houston [1st Dist.] Mar. 6, 2025, no pet.) (en banc) (per curiam) (mem. op., not designated for publication) (noting that while *Bradshaw* court did not specifically address section 134.101, that court cost was added in same act that amended section 133.102 and therefore shared same enabling language that was construed in *Bradshaw*).

---

[4] Claudio-Ruiz disagrees with the rationale of *Bradshaw* but acknowledges that we are bound to follow it under principles of vertical stare decisis. *See Brooks v. State*, 590 S.W.3d 35, 56 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (quotation omitted) ("When the Court of Criminal Appeals has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation under the dictates of vertical stare decisis." (quotation omitted)).

We overrule Claudio-Ruiz's second issue.

## B.    Child Abuse Prevention Fine

Prior to January 1, 2020, Code of Criminal Procedure article 102.0186(a) was entitled "Additional Costs Attendant to Certain Child Sexual Assault and Related Convictions" and provided that a person convicted of several different offenses, including aggravated sexual assault of a child, "shall pay $100 on conviction of the offense." *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 3.24, art. 102.0186, 2007 Tex. Gen. Laws 1120, 1137 (amended 2019).

In the same bill that amended Local Government Code section 133.102(a) and added section 134.101, the 2019 Legislature changed the title of article 102.0186 to "Fine for Certain Child Sexual Assault and Related Convictions" and reclassified the required $100 payment as a fine. *See* TEX. CODE CRIM. PROC. art. 102.0186(a); Act of May 23, 2019, 86th Leg., R.S., ch. 1352, §§ 2.39, 2.40, art. 102.0186(a), 2019 Tex. Gen. Laws 3981, 4006; *McCarter v. State*, 722 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2025, no pet.). As stated above, the Legislature provided that "the changes in law made by this Act apply only to a cost, fee, or fine on conviction for an offense committed on or after the effective date of this Act," and "[a]n offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed." *See* Act of May 23, 2019, §§ 5.01, 5.04, 2019 Tex. Gen. Laws at 4035.

19

Claudio-Ruiz argues that the trial court improperly imposed the $100 Child Abuse Prevention Fine because his offense was committed in 2011, years before the Legislature reclassified this cost as a fine, and therefore we should modify the judgment to delete this fine. The State agrees that the court erred by including the $100 Child Abuse Prevention Fine in the judgment and that we should modify the judgment to delete this fine. We agree.[5] *See Rodriguez v. State*, — S.W.3d —, No. 01-23-00721-CR, 2025 WL 1373693, at *15–16 (Tex. App.—Houston [1st Dist.] May 13, 2025, pet. ref'd); *Baptiste v. State*, No. 01-23-00504-CR, 2025 WL 1298310, at *4 (Tex. App.—Houston [1st Dist.] May 6, 2025, pet. granted) (mem. op., not designated for publication); *Brusco v. State*, No. 14-25-00030-CR, 2026 WL 472412, at *4 (Tex. App.—Houston [14th Dist.] Feb. 19, 2026, no pet.) (mem. op.,

---

[5] We note that imposition of the Child Abuse Prevention Fine in the judgment was improper for another reason: it was not orally pronounced at Claudio-Ruiz's sentencing. Fines are punitive in nature and are part of a defendant's sentence. *Anastassov v. State*, 664 S.W.3d 815, 820 (Tex. Crim. App. 2022). Unlike court costs, which are nonpunitive and compensatory in nature, fines generally must be orally pronounced in the defendant's presence at sentencing. *Armstrong v. State*, 340 S.W.3d 759, 766–67 (Tex. Crim. App. 2011); *McCarter v. State*, 722 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2025, no pet.). As a fine, the Child Abuse Prevention Fine must be included in the trial court's oral pronouncement of a defendant's sentence, and if it is not, the judgment should be modified to delete the fine. *Rodriguez v. State*, — S.W.3d —, No. 01-23-00721-CR, 2025 WL 1373693, at *15 (Tex. App.—Houston [1st Dist.] May 13, 2025, pet. ref'd); *see Abad v. State*, 729 S.W.3d 108, 116–17 (Tex. App.—Houston [14th Dist.] 2025, no pet.); *Fugett v. State*, 721 S.W.3d 120, 122 (Tex. App.—Amarillo 2025, no pet.). Here, when the court orally pronounced Claudio-Ruiz's sentence, it stated only that it was sentencing him to thirty-five years' confinement. It did not mention any fines. It was therefore improper for the trial court to include the Child Abuse Prevention Fine in the judgment.

not designated for publication); *see also Fugett v. State*, 721 S.W.3d 120, 122 (Tex. App.—Amarillo 2025, no pet.) (following *Bradshaw* and concluding that "[b]ecause Appellant was not convicted until 2024, the legislative reclassification of the Child Abuse Prevention assessment of $100 from a 'cost' to a 'fine' applies"); *Rhodes v. State*, 712 S.W.3d 226, 235 (Tex. App.—Eastland 2025, no pet.) (same).

We sustain Claudio-Ruiz's third issue and modify the judgment of conviction to delete references to the $100 Child Abuse Prevention Fine.

### Conclusion

We modify the judgment of the trial court in two respects:

- On Page 1 of the judgment under "<u>Fines</u>," we delete the amount of $100.

- On Page 2 of the judgment under "<u>Fines Imposed Include</u>," we uncheck the box next to "Child Abuse Prevention Fine (Art. 102[.]0186 Code Crim. Proc) ($100)."

We affirm the judgment as modified.

David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).